CASE 89—EQUITY—JANUARY 22, 1884.

## Helm's Ex'r v. Rogers.

### APPEAL FROM THE HARDIN CIRCUIT COURT.

1. The statutes of limitation do not apply to express and continuing trusts.
2. Lapse of time is ineffectual as a bar where the relation of the trust is acknowledged between the parties.
3. But where the relation of trustee is denied, or time and acquiescence has obscured the nature and character of the trust, or the acts of the parties authorize a presumption unfavorable to its continuance, relief will be refused upon the ground of lapse of time and inability of the chancellor to do justice between the parties.

WILSON & HOBSON FOR APPELLANT.

The claim is stale and the trust is denied. (McKnight v. Taylor, 1 How., U. S., 161; 18 Vesey, 286; Bettis v. Allen, 10 Bush, 40.)

The trust being denied by the answer, and not established by the proof, the statute of limitation applies. (Buckner v. Patterson, Litt. Sel. Ca., 234; Johnson's Ch'y, 69.)

The slave had no legal existence. (Taylor v. Embry, 16 B. Mon., 340; Graves v. Allen, 13 *Ib.,* 190.)

SAMUEL McKEE FOR APPELLEE.

It is a well settled principle that courts of equity will hold limitation as a bar when the trust has been ended by a payment, and time is relied upon.

But a mere declaration of payment, not brought home to the *cestui que trust*, can neither end the trust nor stop its continuance, nor bar the *cestui que trust's* demand for a settlement. (3 Wheaton, 481; 3 Howard, 411; 3 Peters, 223; 16 Otto, 106; Thomas v. White, 3 Litt., 177; 2 Mar., 445; 7 Mon., 559.)

The decedent received the fund in virtue of a special act, and received it as trustee. (Sess. Acts, approved February 28, 1850.) The act was obtained by the decedent himself.

CHIEF JUSTICE HARGIS DELIVERED THE OPINION OF THE COURT.

It is well settled in this State that the statutes of limitation do not apply to express and continuing trusts, which are exclusively cognizable in equity. Such trusts are not embraced by the letter or spirit of any part of the existing statutes of limitation; hence they are subject to the rules of equity, which nearly always bear some analogy to the law on the subject of limitation, and when such analogy can not be safely followed, they act upon their own inherent doctrine of discouraging antiquated demands when there has been gross neglect in prosecuting rights, or long and unreasonable acquiescence in the assertion of adversary claims. The general rule that lapse of time constitutes no bar in cases of express and continuing trusts, over which there is no jurisdiction at law, has several qualifications.

Lapse of time is ineffectual as a bar where the relation of trust is acknowledged to exist between the parties and its continuance unbroken. This may be considered an elaboration and fuller explanation of the rule, merely; but where the relation is denied, or time and acquiescence have obscured the nature and character of the trust, or the acts of the parties or other circumstances authorize presumptions unfavorable to its continuance, relief will be refused on the ground of lapse of time, and inability on the part of the chancellor to do complete justice. (Story's Eq., secs. 1520, 1520 *a*.) In cases where no statute of limitation governs, a

defense peculiar to courts of equity may be founded upon
the mere lapse of time and the staleness of the claim. This
rule is for the peace of society, and is enforced by the court
refusing to interfere. (Story's Eq., sec. 1520; Maddox,
&c., v. Allen, 1 Met., 497.)

Admitting, therefore, that this case presents what would
be an express and continuing trust, were limitation and
payment not pleaded, we are nevertheless of opinion that
from the fact that the continuance of the relation of trustee
was openly denied upon the ground of payment of the trust
fund to the *cestui que trust*, and she acquiesced in the asser-
tion of the payment for eight years, and long after the
trustee was dead, and the means and evidence of payment
lost or obscured, she is not entitled to the active interference
of a court of conscience when so many circumstances tend
to raise a strong presumption of actual payment.

About 1840, John L. Helm, who was twice governor of
this Commonwealth, and whose conduct as master of appel-
lant, Hester, now over eighty years old, showed him to have
been kind and indulgent, permitted her to leave his home
and go to that of her husband, a free man of color, and
there remain as his wife on condition that she should be
maintained and provided for. She was furnished with arti-
cles and little comforts, and sent to her husband's home to
act the part of a free wife, with the drudgery of slavery lifted
from her shoulders, though she was in fact a slave and the
lawful property of John L. Helm.

She remained for eight or nine years, when her husband
died, owning land and personalty, without making any pro-
vision for her support. Her old master, whom she had
nursed in his childhood, again came to her relief, took her
back to his home, where she did about as she pleased, fed,

clothed and cared for her until 1865, when she was emancipated with the rest of her race. Shortly after her return from the dead husband's domicile, penniless and unremembered by him, John L. Helm procured an act of the legislature, in 1850, to allow her one-third of the value of her deceased husband's real estate after payment of his debts, his property being in some danger of escheating to the Commonwealth. A decree was rendered in pursuance of the act, and $125 was paid to Governor Helm as her trustee, July, 1850. For this sum and its interest Hetty brought this suit in 1874, twenty-four years after its receipt.

In 1865 or 1866, when Governor Helm was alive, she caused the agent of the Freedman's Bureau to demand this money of him. He declined to pay it because, he said, he had paid her and over paid her, in small sums at a time, whenever she would demand it, which was quite frequent. She made no further effort to assert this claim until long after Governor Helm's death, which occurred on the 8th of September, 1867. Now, after the kind and generous master, who made her practically free, though legally a slave, gave her the dignity of wife and the comforts of a husband, cared for her when she was bereft of that relation, is dead— and the evidence unknown or forgotten, by which, we are satisfied, it could once have been proven that he had more than paid to and for her the trust fund—she comes and asserts this stale claim against his estate without making the affidavit proving her claim, as required by law, still adhering to the old affidavit condemned on the former appeal, that there is no "*just offset*" to her claim, which she attempted to verify after the passage of the General Statutes. It comes too late; it is tainted with suspicion now; the circumstances, with the lapse of time, raise a strong presump-

tion of its payment, and the chancellor ought to have so held.

Wherefore, the judgment is reversed, and cause remanded for further proper proceedings.