CASE 57—ACTION OF BESWICK'S ADMR. AGAINST SMICK'S ADMR. TO ENFORCE AN ALLEGED TRUST.—MAY 21.

## Smick's Admr. v. Beswick's Admr.

113  439
124  112

APPEAL FROM BOYLE CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS. REVERSED.

WITNESSES—ATTORNEY AND CLIENT—PRIVILEGED COMMUNICATION— TRANSACTION WITH PERSONS SINCE DECEASED—CONSTRUCTIVE TRUST.

Held:  1. Civ. Code Prac. section 606. subsection 5, providing that "no attorney shall testify concerning communications made to him in his professional character by his client, or his advice thereon, without the consent of the client," does not prohibit an attorney, in a controversy between his clients, from testifying as to statements made by one of them in the presence of the other.

2. Under Civ. Code Prac. section 606, subsection 2, providing that no person shall testify for himself concerning any transaction with one who is dead when the testimony is offered to be given, an attorney, whose fee is wholly contingent upon the establishment of his client's claim, is not a competent witness for his client as to a transaction with one who is dead when the testimony is offered.

3. Where the grantor in a deed lived near the grantee for nearly thirty years after the execution of the deed, and took no steps

to have a trust declared in her favor, a court of equity will not declare a trust in an action brought by her administrater after her death, and after the death of all the parties who may be presumed to know the facts, the claim being stale and improbable.

ROBT. HARDING & E. V. PURYEAR, for APPELLANT.

On July 6, 1869, appellee's intestate, Elizabeth Beswick, conveyed one hundred acres of land in Washington county, Kentucky, to appellant's intestate, Isaac Smick, in consideration of $1,000, paid by Smick to Beswick, by deed duly signed, acknowledged and recorded September 15, 1869, in Washington county court clerk's office.

Appellee claims, not by any pleading but by affidavit and deposition, that at the time and before the deed was executed, a verbal agreement was made by which, (contrary to the terms of the deed) the land was conveyed to Smick and by which verbal agreement Smick was to pay off an execution of $216 then in the sheriff's hands against Beswick; to rent out and sell the land and reimburse himself and reinvest the balance of the proceeds in land for Beswick; that in 1889 Smick sold the land for $1,000, and the reasonable rental value thereof from July, 1869 to 1889, with interest, is $1,545.35, and the purchase price of the sale of the land with interest is $2,018.25, the two sums aggregating $3,663, to be credited by $511.05 and $25, leaving a balance of $3,127.55 for which balance appellee recovered judgment below. We contend that the judgment is radically wrong on the following grounds to-wit:

1. Because the court erred in overruling the demurrer to appellee's cross-petition.

2. Because the court erred upon final hearing in not applying the statutes of limitation and dismissing the cross-petition.

3. Because the deed of Beswick to Smick dated July 6, 1869, is the only legal evidence of the agreement between them in regard to the land, and until that deed is set aside, reformed or attacked for fraud or mistake, it alone must be looked to for the agreement between the parties, and the court erred in not so holding.

4. Because the court erred in not sustaining appellant's exceptions to the depositions of C. Terhune, Bettie Lynch, Lydia Good, J. B. Good, Bull, Phillips, Graham and Prewitt, and in considering the testimony excepted to in making the judgment.

5. Because $1,545.35 of the judgment is for rent, and there is no proof of Smick ever having received a dime or dollar of rent from the land.

AUTHORITIES CITED.

Green v. Page, &c., 80 Ky., 370; Powers v. Tyler, 4 ·Reporter, Feland, 9 R., 105; Saur v. Sayers, 2 R., 229; Hansford v. Dugan, 10 R., 360; ·Corbin v. Oldham, 1 R., 327; Williams · v. Rogers, 14 Bush, 776; ·Castleman v. Southern Mutual Life Ins. Co., 14 Bush, 202; 1 Greenleaf, sec. 275; Wright v. Shelby R. R. Co., 16 B. Mon., 6; Mutual Benefit Assn. v. .Hickman, 86 Ky., 258.

W. C. BELL & CORNEIL TERHUNE, FOR APPELLEE.

For several years prior to· 1869, Elizabeth Beswick owned a ·tract of land in Washington county, Kentucky, on which she .resided with her two sons, George and Philip, and daughter Phoebe. Her two sons at the outbreak of the ·Civil War went into the Confederate army. Her neighbors were ·loyal to the Federal side and on account of the prejudice then existing in her neighborhood, she removed to Mercer county near her brother, Isaac Smick. At the close ·of the war, her son George returned, to· find the home dismantled and the mother banished; his brother ' Philip had been captured and died in prison. George was not capable of managing the farm. and on account ·of the prejudice still existing in the neighborhood, Mrs. Beswick was unwilling to return to her farm. A judgment had been obtained against her and she. had no means to pay it and her home was in danger of being sacrificed. Her bachelor brother, Isaac Smick had the money to save the land from sacrifice, and she determined to make him a deed to the land, reciting as a ·consideration therefor $1,000, and it was agreed that he should take the deed to the land, rent it out, reimburse himself for the money he would`.expend in satisfying the execution and other expenses, sell ·the land, collect the proceeds and invest it in a home for her in Mercer county.

Thus was created a verbal trust' sure, distinct and certain, in which Isaac Smick, standing in close blood relationship to her, took an absolute deed to himself, which was one of the incidents in the creation of the. verbal trust upon the conclusion ,of all the parties that the trust could the better be effected by Mrs. Beswick not appearing upon the record as the real beneficiary.

Isaac Smick rented or occupied the land for some twenty years, and in 1889 sold it for $1,000, collected all the purchase money except $350 which balance has been collected and is now held by appellant.

During all these years, Mrs. Beswick and her son, George paid the taxes on this land and the proof abundantly shows that

Isaac Smick repeatedly admitted after he sold the land that he held the money for Mrs. Beswick.

On February 14, 1900, appellant filed his bill for a settlement of the estate of Isaac Smick, there not being sufficient personal estate to pay his debts, and sought to sell his real estate to pay said indebtedness and in this suit he made appellee a party defendant, and the appellee by an informal answer filed his claim with the proper proof, which was allowed by the court, and from which judgment this appeal is prosecuted.

We contend that having established a verbal trust by the evidence, the statute of limitation does not run against it, and the only question is, as to the amount of Smick's indebtedness to the estate of Mrs. Beswick.

### AUTHORITIES CITED.

Fant v. Turner, 96 Ky., 634; Kentucky Statutes, sec. 209, 2543; Helm's Exr. v. Rogers, 81 Ky., 568, Civil Code, sec. 606, subsec. 5; Story's Eq. Jurisprudence, sec. 162; Adams' Equity, side page, 86; Williams v. Williams, 8 Bush, 251; Gamer v. Gamer, 4 R., 824; Ferguson v. Rafferty, 6 L. R. A., 33; Veten v. Cammack, 20 L. R. A., 113; Beach v. Cummins, 13 R., 881; Roach v. George, 93 Ky., 609; Monarch v. Jones, 8 R., 612; Bush v. Walker, 9 R., 777; Gossman v. Gossman, 13 R., 243.

OPINION OF THE COURT BY JUDGE BURNAM—REVERSING.

On the 24th of February, 1864, Joseph McCloskey and wife conveyed to Elizabeth Beswick a tract of 100 acres of land in Washington county in consideration of $1,000, the receipt of which was acknowledged in the deed. On the 6th of July, 1869, Elizabeth Beswick conveyed the same tract of land by general warranty deed to her brother, Isaac Smick, for the recited consideration of $1,000, paid to her by her brother. The deed was written by C. Terhune, an attorney at law, in the presence of the grantor and grantee and Phoebe Smick and Phoebe and George Beswick. After the execution of the deed Smick took possession of and rented the land for some 20 years, a part of the time to the claimant, George Beswick, and in January, 1889, sold it to Calvin Vest in consideration of $100 paid

in cash and $900 to be paid in three equal installments, due, respectively, in one, two and three years, for which promissory notes were executed, without interest. Elizabeth Beswick died in 1898, at the advanced age of 92 years, and her brother followed her in about 12 months thereafter. On the 14th of February, 1900, his administrator instituted this suit in the Boyle circuit court for a settlement of his estate, alleging that the personal estate of decedent was insufficient to pay his debts, and that it would be necessary to have certain real estate sold for this purpose. H. C. Smith, administrator of Elizabeth Beswick, was made a defendant, and filed the following claim against the estate:

To rent of her place in Washington Co., from
   July, 1869, to January, 1889, at $50 per year
   for 19 years and 6 months, the whole aggre-
   gating ................................... $  975 00
To interest on each annual rent for same period..    570 35

   Total ................................... $1,545 35

#### Credits.

By execution of Joseph McCloskey, is-
   sued from Mercer circuit court against
   her, and paid by said Smick July 13,
   1869 ............................. $216 08
By interest on same to January 16,
   1889 ............................. 252 72
Taxes paid by Smick for 1873 on said
   land, paid April 7, 1875............. 11 70
By interest to January 16, 1889 (see tax
   receipts hereto attached)........... 9 65
By tax paid by him for 1874 on same
   land, paid April 17, 1875............ 11 40
By interest on same to January 16, 1889

(see tax receipt hereto attached).... $9 50

Total credits to that date......... $ 511 05

By balance due him on January 16, 1889...... $1,034 30
To amount of sale of land to Calvin Vest, January 16, 1889, $1,000 of which was paid in
cash ................................... 100 00

Balance due January 16, 1889................. $1,134 30
Interest on this sum to Smick's death, 1899.... 686 25
To cash on land January 16, 1890.............. 300 00
Interest on same to February, 1899............ 162 00
To cash on land January 16, 1891.............. 300 00
Interest on same to February, 1899............ 144 00
To cash on land January 16, 1892 ............. 300 00
Interest on same to February, 1899............ 126 00

Balance due February, 1899................. $3,152 55
By her burial expenses........................ 25 00

Balance ................................. $3,127 55

This claim is mainly based upon the affidavit of C. Terhune, the attorney who wrote the deed from Elizabeth Beswick to Isaac Smick in July, 1869. He says, in substance, that at the date of the execution of that deed Mrs. Beswick still owed $216.80 to Joe McCloskey upon the purchase price of the land, upon which he obtained judgment, and that it was agreed between Mrs. Beswick and her brother that he should pay off the debt, and that she should make an absolute conveyance of her Washington county land to him, which he was to rent until he found a suitable purchaser, and was then to sell, and, after repaying to himself the money advanced to pay off the debt due to McCloskey, to invest the balance of the fund in a home for

Mrs. Beswick. The affiant states that he paid no further attention to this matter until Smick sold the land to Vest in 1889, at which time Smick employed him to write a deed to Vest, and he says that at that time he advised Smick to have the cash payment larger, so that he could at once buy some land for his sister in Mercer county; that Smick responded that when he got all the money he would make the investment for her; that he paid no further attention to the matter until Smick's death in 1899. Affiant filed this claim as one of the attorneys of George Beswick under a contract that they were to receive for their services a fee equal to 50 per cent. of the amount recovered. He testifies that all the parties who were present at the time the deed was prepared, including the attesting witnesses, were dead, except himself and George Beswick, in whose name the claim was being prosecuted; that Mrs. Beswick and her brother lived near each other during the balance of their lives. Mrs. Lynch, who was in the employe of Mrs. Beswick as a cook and wash woman, testifies that while she was living there she heard Mrs. Beswick ask her brother for money, but that he never gave it to her; and that two days before her death Mrs. Beswick requested her to ask Smick for some of "her" money, and that she did so, and he responded that "she didn't need it; to let her son George get her anything she wanted." And one J. B. Layne testifies that some seven or eight years before the death of Smick, at a time when he was in his employ, he remarked to Smick that he ought to get his nephew George Beswick to live with him; that Smick responded that when he got the balance of the money on the Washington county farm he was going to buy them a place to live on. Upon cross-examination this witness says that he did not speak of this conversation to any one until he made his affidavit in April,

1900, when he was informed by the attorney Terhune that he was wanted as a witness in the case. There are filed in the record a number of receipts, of which the following is a specimen: "Washington Co., Dec. 16, 1882. Received of George Beswick the sum of $3.90 in full of revenue taxes, and county levy for the year 1881, including railroad taxes. Taken out of rent, Washington county farm. Sidney Green, Sheriff, by John Burton, Deputy." Appellants, in their reply controverted the alleged claim, and also relied upon the lapse of time and the statute of limitation. Appellees responded that Smick, shortly before his death, had admitted the trust, and that limitation did not run. Appellants excepted to the deposition of Terhune, which was overruled, and upon final submission the chancellor allowed appellees' entire claim, from which judgment defendant appeals, and it is insisted that the testimony of the attorney Terhune is incompetent, under subsections 2 and 5 of section 606 of the Code.

Subsection 5 provides that: "No attorney shall testify concerning communications made to him in his professional character by his client, or his advice thereon, without the consent of the client." But this rule does not apply in this case. Here the controversy is between parties, both of whom occupy the relation of clients to the witness, and their statements were made in the presence of each other, and may be proved by him, because such statements are not in their nature confidential, and can not be regarded as privileged communications. We think the reason of the rule has no application in such cases. See Rice v. Rice, 53 Ky., 336. But the other ground presents a much more formidable question. Subsection 2 of section 606 of the Code provides that: "No person shall testify for himself concerning any verbal statement of or transaction with

. . . one who is dead when the testimony is offered to be given, except for the purpose and to the extent of affecting one who is living and who, when over fourteen years of age and of sound mind,' heard such statement, or was present when such transaction took place." This witness admits that he has a large pecuniary interest in this suit, which is dependent upon the establishment of the claim about which he testifies. If his client fails to recover, he gets nothing; if he succeeds, he and his associate counsel will receive a sum equal to one-half of such recovery. In Apperson's Ex'x v. Bank, 10 R., 943 (10 S. W., 801), this court held that it was not necessary that a witness should be a party to or directly interested in the result of a suit against the representative of one who is dead in order to render such testimony incompetent as to a transaction with the decedent; that to do so it must appear that it would have the effect to directly or indirectly benefit the witness pecuniarily. This witness has a pecuniary interest in the result of the suit, and it can not be denied that his testimony is the main prop upon which the claim of appellees rests. The facts of this case distinguish it from Haydon v. Easter (15 R., 597) (24 S. W., 626). In that case it was held that Kendel, the attorney for the plaintiff, was not incompetent, because the statute gave him a lien for a reasonable fee upon the recovery, there being no proof that he had any other interest, and the plaintiff was primarily liable for his fee, and the statute merely secured this fee by a lien upon the recovery. In this case the client is not liable at all unless there is a recovery, and the witness' interest in that event equals that of the client himself. We think that the witness had such pecuniary interest in the result of the suit as to render him incompetent to testify as to statements made by Smick, and without this testimony

the proof wholly fails to support a recovery. But the principle expressed in the maxim, *"Vigilantibus non dormientibus aequitas subvenit,"* is an effectual bar to recovery on this claim. The courts of equity will not enforce stale demands where a party has slept on his rights and acquiesced for an unreasonable length of time. Lord Camden, in Smith v. Clay, 3 Brown, Ch., 640, announces the principle in these words: "The court of equity has always refused its aid to stale demands, where the party has slept upon his rights and acquiesced for a great length of time. Nothing can call forth this court into activity but conscience, good faith, and reasonable diligence. Where these are wanting, the court is passive, and does nothing." This quotation has been frequently quoted, and generally approved. The same principle is announced in 18 Am. & Eng. Ency. Law (2d Ed.), p. 105, in these words: "Where, from delay, any conclusion at which the court may arrive must at most be conjectural, and the original transactions have become so obscure by lapse of time, loss of evidence, and death of parties or witnesses as to render it difficult, if not impossible, to do justice, the plaintiff will, by his laches, be precluded from relief, and it is not even necessary that the court should be satisfied that the original claim was unjust, or had been satisfied." In Harrod's Heirs v. Fountleroy, 26 Ky., 548, it was held that after a lapse of 30 years and the death of both parties to an assignment of a plat and certificate for land the chancellor would not sanction an investigation of the genuineness of the assignment unless the delay be satisfactorily accounted for. And in Taylor's Adm'r v. Morrison's Exr's, 37 Ky., 242, which was a suit to settle a partnership, it was held that after a lapse of 14 years and the death of two of the partners, rendering just settlement difficult, if not impossible, the lapse of

time alone, without being pleaded as a conclusive bar, would present an imposing obstacle to any prayer for such settlement of the old partnership accounts. And in Helm's Ex'r v. Rogers, 81 Ky., 568 (5 R., 569), it was held that where the relation of trustee was denied, or time and acquiescence had obscured the nature and character of the trust, or the acts of the parties authorized a presumption unfavorable to its continuance, relief would be refused on the ground of the lapse of time and inability of the chancellor to do justice between the parties. And in Bettis v. Allen, 73 Ky., 40, the court refused to enforce a stale claim not barred by the statute of limitation on the ground of laches. Many other cases might be cited in which the doctrine of laches has been applied by this court to defeat stale claims, and none of them more strongly demanded its application than does this case. Mrs. Beswick lived in the immediate neighborhood of Isaac Smick for nearly 30 years after the execution of the deed, and took no steps to enforce the alleged trust, and after her death and the death of her brother and of all the parties who were present at its execution, and who may be presumed to have known of the alleged contemporaneous parol agreement, this suit is brought. The claim is stale and improbable, and upon the showing made the chancellor should have declined to allow it against the estate of decedent.

For reasons indicated, the judgment is reversed, and cause remanded, with instruction to reject the claim, and for other proceedings consistent herewith.

Whole court sitting.

Petition for rehearing by appellee overruled.