CASE 16—ACTION  BY  HUSTON  H.  JOLLY  AGAINST MATTHIAS MILLER TO SET ASIDE A DEED AND COMPEL AN ACCOUNTING AS ADMINISTRATOR. —December 14.

# Jolly v. Miller

Appeal from Breckinridge Circuit Court.

WEED S. CHELF, Circuit Judge.

Judgment for defendant. Plaintiff appeals. Affirmed.

1. Appeal—Decision on Merits—Appeal from Decision on Demurrer.—On appeal from a decision on a demurrer to a complaint in a suit to set aside a deed, where all the pleadings are before the court, the merits of the case should be passed upon.

2. Limitation of Actions—Accrual of Right of Action Against Trustee—Cancellation of Deed.—Defendant was appointed administrator of the estate of his brother and was authorized by the heirs to compromise claims belonging to the estate and also given a power of attorney to sell and convey real estate. Subsequently on February 20, 1892, plaintiff, an heir, sold and conveyed to defendant his entire interest in the estate. January 1, 1902, defendant resigned as administrator, and April 26, 1904, plaintiff brought suit to set aside his conveyance for fraud and compel an accounting. At the

Jolly v. Miller.

time of bringing suit defendant's successor as administrator had not made a final settlement of his accounts. Held that, as plaintiff's conveyance on February 20, 1892, terminated the trust relationship between the parties, the statute of limitations limiting the time for the bringing of this action began to run on that date, and was not suspended until defendant or his successor had made a final settlement.

3. Same.—Whenever a trustee, whether the trust be created by power of attorney or by appointment as guardian, executor, or administrator, repudiates the trust and asserts title to the subject of the trust, the statute of limitations begins to run when a knowledge of the repudiations is brought home to the cestui qui trust.

4. Cancellation of Instruments—Additional Relief—Conveyance to Administrator.—An heir, who has conveyed his interest in the estate to the administrator and subsequently sues to set aside the deed for fraud and asks for an accounting, cannot require an accounting until the conveyance is set aside.

5. Limitation of Actions—Pleading in Avoidance of Defense.— Where defendant, in addition to traversing the allegations of the petition, pleads the statute of limitations and plaintiff joins issue thereon, the traverse of the plea of limitations is bad and interposes no real defense to the plea.

6. Same—Demurrer Raising Defense—Statute of limitations as a defense cannot be raised by demurrer.

7. Appeal—Harmless Error—Sustaining Demurrer.—Defendant pleaded statute of limitations, and, after plaintiff's demurrer had been overruled, he traversed the affirmative allegations of the answer and thereafter filed an amended petition to which defendant demurred on the ground of limitations. Pending the demurrer an answer was filed and demurrer thereto interposed, and, pending the demurrer, a reply was filed. Defendant withdrew his answer to the amended petition and renewed his demurrer to the amended petition, which demurrer was sustained. Held that, while the demurrer to the amended petition should have been sustained, the reply to the plea of limitations was bad, and the court on the pleadings as a whole should have rendered the judgment which it did.

CLAUDE MERCER for Appellant.

N. McC. MERCER of Counsel.

Jolly v. Miller.

1. Where a petition and amended petition each allege the existence of a trust relationship of administrator and heir and of principal and agent, at the time of the consummation of a sale complained of, such averments, in themselves, allege the existence of grounds which avoids or suspends the statute of limitations, and even though the petition and amended petition, upon their face show that more than ten years has elapsed since the sale complained of, yet, 'tis improper to raise the question of limitation by the filing of a demurrer, and a judgment sustaining a demurrer filed to such petition and amended petition with such averments, thereby attempting to raise the question of limitations, will be reversed and a judgment dismissing such petition and amended petition will be set aside.

2. The statute of limitations must be relied upon by a plea, and never can be raised by demurrer, unless the petition and amended petition disclose that the statutory period has elapsed before the filing of the petition and amended petition, and the petition and amended petition fail to show the existence of any grounds of avoidance of the statute.

3. Where a petition and amended petition specially aver the existence and continuation of a trust relationship of administrator and heir and of principal and agent, and the defendant desires to rely upon the statute of limitations as a defense, such defense must be specifically plead and furthermore the plea must contain such a statement of facts, as in themselves, show that the statute of limitations constitutes a valid defense, notwithstanding the averments of trust relationship existing as pleaded in the petition and amended petition.

4. The plea of limitations as set forth in the defendant's answer herein is wholly insufficient to entitle him to that relief, even though he were entitled to such relief when properly pleaded, for the reasons that no statements of facts appear therein to show that defendant is relieved by lapse of time, notwithstanding the averments of the petition and amended petition showing the existence of a trust relationship, and the demurrer, filed thereto should be sustained.

5. Where gross inadequacy of consideration appears in all transactions as between persons occupying any confidential relationship at the time of a sale, evidence of good faith, of the condition of the estate, of knowledge of the value of the estate will be disregarded and fraud will be presumed and the trustee and purchaser will be compelled to account to and pay over to the cestui que trust all profits accruing in the purchase—over and above the purchase price and the purchase price will

Jolly v. Miller.

be considered as a payment upon the amount due the cestui que trust from the estate, by the trustee.

6.  The trustee having admitted that he has profited largely in the sale complained of in this action, he will be compelled to account to and pay over such profits to the cestui que trust.

7.  Where a trustee buys the interest of the cestui que trust by misrepresentations and fraud, without having renounced his trusteeship or notified the cestui que trust of his renunciation, and his trusteeship has not been revoked by said cestui que trust, said trustee will be continued as such, by operation of law, and will be compelled to account to the cestui que trust for the profits.

8.  An administrator is not permitted to buy the interest of the heir and profit thereby and shall he do so he cannot rely upon the statute of limitations as a defense, because during the administration of an estate and before it is settled up, his position as administrator is a subsisting and continuing trust within the meaning of section 2543 of the statutes which exempts such from the operation of the statute of limitations, and limitations will only commence to run in favor of such administrator and against an heir whose interest he has purchased, after the estate has been finally settled and the interest of the heir is ascertained.

9.  An administrator who purchases the interest of an heir during the course of the administration of said estate and in said purchase, by deed, includes both realty and personalty, limitations will not be computed from the date of said purchase but only from the time the estate may be settled up and the interest of the heir is ascertained.

10.  An agent who purchases from his principal, the property in his hands, without having openly renounced his agency to the principal cannot rely upon the statute of limitations as a defense to defeat the right of the principal to recover the profits realized thereby, as in the absence of such renunciation by the agent, or revocation of agency by the principal the privity of relation of principal and agent still exists and there is nothing to set in operation the statute of limitations in favor of said agent as against the claims of the principal.

11.  The estate in this controversy being yet unsettled finally, the appellee who was the administrator of it from 1888 to 1902, when he resigned, cannot rely upon the statute of limitations to prevent the appellant from recovering from the appellee the profits he made in the purchase of appellant's interest, while appellee was the administrator.

12.  The appellant having made the appellee his agent in the

Jolly v. Miller.

handling, management and control of the real estate belonging to intestate's estate, and said agency was for an indefinite period contemplating the full period required to settle said estate, and said real estate, belonging thereto, having not yet been disposed of and appellee never having renounced his agency to the appellant, nor appellant never having revoked said agency, the appellee cannot interpose a plea of limitations in bar of appellant's right to make him account for the profits realized in a sale of appellant's interest, though made by deed more than ten years before the institution of this action.

13. This action being one to require an accounting for profits upon the part of a trustee, then it could only be barred fifteen years after the termination of the trusteeship and the interest of the cestui que trust is ascertained. The ten year statute of limitations attempted to be pleaded in no event could constitute a valid defense to an action for an accounting.

14. The deed made by appellant to appellee in consummation of said sale is valid in every particular except as to consideration and upon accounting for the profits need not be disturbed.

### AUTHORITIES CITED.

Pritchford v. Gatewood's adm'r., 10 L. R., 112; Civil Code of Practice, section 134; Humphrey v. Hughes, 79 Ky., 487; Patrick v. Sweeney, 5 Bush, 421; National Mutual Association v. Jones, 84 Ky., 110; Chiles v. Drake, 2 Metc., 146; Stuart v. L. & N. R. R., 10 R., 542; Jones v. Jones, 5 R., 774; Slayden v. McDonal, 15 R., 28; Kentucky Statutes, Section 2543; Lexington's Trustees v. Lindsay's heirs, 2 A. K. M., 443; Thomas v. White, 3 Litt., 177; Pugh's heirs v. Bell's heirs, I. J. J. M., 398; Helm's ex'or v. Rodgers, 81 Ky., 568; Hendrick v. Robinson's adm'r, 7 Dana, 167; Bohannon's heirs v. Sthreshler's exor., 2 B. M., 437; Hargis, etc. v. Sewell's adm'r., 87 Ky., 63; App v. Driesbach, 21 Amer. Decisions, 451; Robinson's committee v. Elam's adm'r., 90Ky., 300; Richardson v. Chanslor's Trustee, 103 Ky., 425; McHarry v. Irvin's Ex'ors, 85 Ky., 323-347; Keeler v. Keenan, 5 T. B. M., 573; Black v. Keenan, 5 Dana, 570; Markwell v. Gray, 9 R., 534; Faucett v. Faucett, 1 Bush, 511; Handlin, etc. v. Davis, etc., 81 Ky., 34; Price v. Thompson, 84 Ky., 219; Downey v. Talbott's adm'r, 4 R., 453; Sue Brown Elliott v. City of Louisville, deeded February 14, 1906.

MURRAY & MURRAY for Appellee.

(No briefs in the record.)

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

In July, 1888, James Miller, a wealthy bachelor, and a member of one of the most prominent families in Breckinridge county, died, leaving no will, and his large estate passed by descent to his brothers and sisters and the children of such as were dead, as his only heirs at law. Matthias Miller, one of his brothers, was appointed and qualified as adminis- trator of his estate, and he was also, by writing signed by the heirs at law of the estate of James Miller, deceased, authorized to compromise any and all claims belonging to said estate with the debtors, when, in his judgment, it would be to the best interest of said heirs so to do. This authority to adjust and compromise claims was given him on March 9, 1889, and he was thereafter, on the 15th day of December. 1891, given a power of attorney by all the heirs of James Miller, deceased, authorizing him "to sell and convey in fee simple, and by deed of general warranty, for such price and upon such terms of credit, and to such person or persons, as he should think fit, the whole or any part of the lands and real estate that belong, or may hereafter belong, to the estate of James Miller, deceased. Said lands and real estate are situated in the counties of Breckinridge, Hancock and Ohio." Acting under his power and authority as administrator and agent, Matthias Miller proceeded with the settlement of the estate until 1892, when Huston H. Jolly, on the 20th day of February of that year, sold and conveyed by deed to him, for the sum of $240 cash, his entire interest in and to the estate of James Miller, deceased, which consisted of an undivided one sixty-fourth interest, and is

described in the deed as follows: "All my interest
in the estate of James Miller, deceased, consisting
of lands, personalty and mixed estate of every kind,
character and description. Said lands are situated
as follows: About 430 acres on Sinking creek, in
Breckinridge county; about 250 acres near Clover-
port, same county; about 250 acres near Hardinsburg,
same county; about 94 acres known as the 'J. Morris
land,' same county; about 86 acres known as the
'Pulliam land,' near Hardinsburg; about 135 acres
near Ruth's Station on the L. H. & W. R. R., same
county; about —— acres near Glendeane Station,
same county; about 117 acres known as 'Newman
land,' same county; about 100 acres known as 'G.
Dowell land,' same county; about 85 acres known as
'William Hinton land,' same county; about 95 acres
known as 'Fisher land,' near Cloverport, same
county; about 30 acres near North Fork of Rough
Bridge, same county; about 40 acres near G. Law-
rence, same county; about 125 acres near J.
Matthews; about 40 acres near Sam Johnson's; about
125 acres known as 'Fraize Horsley farm;' about ——
acres near Bewleyville; about 3 lots in Hardinsburg;
3 lots in Cloverport. The following in Hancock
county: About 152 acres known as the 'Farmer land.'
and about 340 acres known as the 'Pate land,' and
all other lands that said decedent may have owned
at his death, or that may since have been purchased
for the benefit of the estate." Matthias Miller, about
the time of this conveyance, bought out several of
the other heirs at law of James Miller, deceased. He
continued in the management of the business of the
estate, making settlements with the county court
from time to time, until the 1st day of January, 1902,
when, having been elected county judge of Breckin-
ridge county, he resigned his trust as administrator

of the estate of James Miller, deceased, and was succeeded by James W. Miller, a nephew, who is now acting as administrator, and is proceeding with the settlement of the estate. On April 26, 1904, Huston H. Jolly filed his suit in the Breckinridge circuit court seeking to have the deed of conveyance from himself to Matthias Miller rescinded and canceled, and to compel Matthias Miller to account to him for such sums of money as he would have received in the settlement of his uncle James Miller's estate, subject to a credit of $240, the amount which he had received at the date of the execution of said convey- ance. He alleges in his petition that the deed of conveyance was procured from him through fraud, deceit, and misrepresentations of his uncle Matthias, in whom he had unlimited and absolute confidence. The defendant demurred to the petition, and, the demurrer being overruled, he answered, admitting his qualification as administrator, his appointment as agent to settle and adjust all claims and sell and convey real estate, and admitting the purchase of plaintiff's interest in the estate, but denying that the conveyance was procured through fraud or misrepre- sentations, or that plaintiff had not been paid the full value of his interest in the estate, and pleading the statute of limitations in bar of plaintiff's right to recover. Plaintiff demurred to the plea in bar, and, the demurrer being overruled, plaintiff filed his reply traversing the affirmative allegations of the answer. Thereafter plaintiff offered to file an amended peti- tion, which he was, over the objection of the defendant, permitted to file. A demurrer was inter- posed to this petition as amended, and, pending the demurrer, answer was filed, to which a demurrer was interposed, and, pending this demurrer, a reply was filed traversing the affirmative matter in the answer

to the amended petition. Defendant, having with
drawn this answer to the amended petition, renewed
his demurrer to the petition as amended, and the
court, upon final hearing, sustained this demurrer to
the petition as amended, and, plaintiff declining to
plead further, the petition was dismissed, and
plaintiff appeals.

There is but one question in this case raised by
the pleadings which it will be necessary to determine,
and that is, is the plea of the statute of limitations
interposed by the defendant a bar to plaintiff's right
of recovery? It is the contention of appellee that,
immediately upon the execution of the deed by appel
lant on February 20, 1892, the statute of limitations
began to run, and that upon that date appellee ceased
to act as administrator of the estate of his deceased
brother for the benefit of appellant, and ceased to
act as agent for appellant in the settlement of the
estate of James Miller, deceased; and that appellant's
cause of action, if he had any, accrued to him at
once upon the execution and delivery of the deed
by him to his uncle, Matthias Miller, and the payment
to him by Matthias Miller of the $240 consideration
for said conveyance. Appellant contends with much
earnestness and zeal that the statute of limitations
did not begin to run against him upon the execution
of said deed, and has not yet begun to run against
him, and will not begin to run until after Matthias
Miller, or James W. Miller, who succeeded him, has
made a final and complete settlement of his accounts
as administrator of the estate of James Miller,
deceased; that Matthias Miller occupies a trust rela·
tion toward appellant, and that he cannot deal with
him to the disadvantage of his cestui que trust; and
that the trustee cannot repudiate the trust and put the
statute of limitations in force before he has made a

full, final, and complete settlement of his trust estate.

Appellee insists that the sole question for determination is whether or not the trial court erred in sustaining the demurrer to the petition as amended, and in dismissing the petition upon plaintiff's failure and refusal to plead further; while appellant contends that, as the entire record—all of the pleadings in the case—is now before this court, the merits of the case should be passed upon and settled by this court. We are of opinion that the contention of appellant is correct; that, the pleadings all being before us, we should pass upon the merits of the questions involved in this suit, and to that end it will be first necessary to determine from the pleadings the character of the trust created by the powers of attorney and the appointment of Matthias Miller as administrator of the estate of his deceased brother. Is the trust created by his appointment and qualification as administrator, and his acceptance of the powers of attorney authorizing him to settle and adjust claims and to sell and dispose of the real estate, a continuing subsisting trust? If not, when did it cease to be such? Appellee contends that it is not, as to appellant, and has not been since the 20th day of February, 1892; that the relationship of trustee and cestui que trust between appellee and appellant ceased absolutely on that date; and that the statute of limitation commenced to run against appellant on that day. Wood on Limitation lays down this rule: "When the trust is repudiated by clear and unequivocal acts and words of the trustee, who claims to hold the trust property as his own, and such repudiation and claim are brought to the beneficiary in such a manner that he is called upon to assert his equitable right, the statute of limitations will begin to run from the time such repudiation and

claim came to the knowledge of the beneficiary.''
And further: ''It is undoubtedly true (generally)
that, as against the trustee of an actual, express, or
subsisting trust, the statute does not begin to run
against the beneficiary until the trustee has openly, to
the knowledge of the beneficiary, renounced, dis-
claimed, or repudiated the trust.'' Undoubtedly
appellant knew on the 20th of February, 1892, that
from that time forth appellee would hold the interest
which he had that day bought of appellant in the
estate of his uncle, not as trustee, but as his own,
and that he would no longer account to appellant
as agent or trustee or administrator, but that he
would hold, manage, and control the interest in the
estate of James Miller, deceased, covered by said
deed, as his own individual property, and appellant
must have known that, so long as that deed remained
in force and effect, he had no right, title, or claim
to any part of the estate of his deceased uncle, and
that, so far as he was concerned, the fiduciary rela-
tions between himself and his uncle Matthias Miller,
acting in either his capacity as administrator or
agent, had ceased.

In the case of Chenault v. Quisenberry, 57 S. W.,
234, 22 Ky. Law Rep., 79, this court said that a deed
executed by a trustee as trustee, after the property
had been conveyed by the cestui que trust to the
trustee, was void, because the conveyance of the prop-
erty by the beneficiary to the trustee revoked the
power of attorney under which the trustee became
trustee. Under the authority of the rule laid down
in the Chenault case, supra, the power of attorney
executed by the plaintiff to his uncle Matthias Miller
authorizing him to sell the real estate belonging to
the estate of his deceased uncle in which he had an
interest, and to settle and adjust debts due and owing

to the estate, was wholly revoked upon the execution of his deed on February 20, 1892, and, as that deed passed his entire interest in both the realty and personalty, it likewise severed the trust relation existing between himself and his uncle Matthias by virtue of the appointment and qualification of his said uncle as · administrator of the estate of James Miller, deceased. In the case of Stillwell, etc., v. Leavy, etc.. 84 Ky., 385, 8 Ky. Law Rep., 321, 1 S. W., 593, this court said: ''The proposition that the trustee of an express trust cannot throw off his allegiance to his beneficiary and acquire a right to the trust property by adverse holding for the period prescribed by the statute of limitations, unless his acts are so open and notorious as to take notice home to the beneficiary, is denied.'' In this case the court recognizes the doc trine that, if the title to the property is claimed by the trustee, and that fact is known, then the statute of limitations does apply, and this doctrine applies to all express trusts, regardless of how the relationship was created. In the case of Mitchell & Co. v. Berry, etc., 1 Metc., 619, this court said: ''Where a cestui que trust desires to avoid a sale of his estate at which the trustee has become the purchaser, he must apply to chancery in a reasonable time after he has knowledge of the facts which impeach the sale, or he will be presumed to have acquiesced.'' In this case the guardian ad litem had purchased the property at a public sale, and, while it was held that the relation did not constitute him trustee, yet the court said: ''If it were admitted that the guardian ad litem was in the position of trustee, yet the plaintiffs would not be entitled to relief,  *  *  *'' because the court found that the beneficiary had knowledge of the transaction, and, although in the possession of that knowledge, had waited an unreasonable length of time

before instituting his suit. The doctrine seems now to be well settled that, whenever the trustee, whether the trust be created by powers of attorney or by appointment as guardian or executor or administrator, repudiates the trust and asserts title to the subject of the trust, and a knowledge of this act of repudiation is brought home to the cestui que trust, then the statute of limitations begins to run. In the case of Hall v. Ditto, 11 Ky. Law Rep., 667, 12 S. W., 942, one John Adams held a tract of land as trustee of certain children of David Adams, David having conveyed the land to him as trustee for the children. The trustee traded some negroes to one of the cestuis que trustent for her interest in the land, and thereafter conveyed the land to one, Hall. The court held that the statute of limitations applied, because the cestui que trust had knowledge of the trustee's claiming to own the land. The court said: "This certainly amounted to an open renunciation of the trust created by the deed, and a notorious and open claim adversely to her interest in the land. Unquestionably, the statute then began to run against the cestui que trust." In Helm's Ex'r v. Rogers, 81 Ky., 570, 5 Ky. Law Rep., 569, the court said: "Admitting, therefore, that this case presents what would be an express and continuing trust were not limitation and payment pleaded, we are, nevertheless, of the opinion that, from the fact that the continuance of the relation of trustee was openly denied upon the ground of payment of the trust fund to the cestui que trust, and she acquiesced in the assertion of payment for eight years, and long after the trustee was dead and the means and evidence of payment was lost or obscured, she is not entitled to active interference of a court of conscience," etc. In Smick's Adm'r v. Beswick's Adm'r, 113 Ky., 447, 24 Ky. Law Rep.,

276, 68 S. W., 439, the case of Helm v. Rogers is quoted with approval. In the case of Robinson's Committee v. Elam's Ex'r, 11 Ky. Law Rep., 307, 14 S. W., 84, and Berry v. Berry's Adm'r, 15 Ky. Law Rep., 855, 22 S. W., 654, this court held that limitation began to run from the time the beneficiary could bring suit to enforce the trust. In the case of Hoffert, etc., v. Miller, 86 Ky., 572, 9 Ky. Law Rep., 732, reported in 6 S. W., 447, this court held that one could not set aside a deed of land for fraud, nor maintain an action therefor, where the deed was executed more than 10 years before the action was brought, during which time the plaintiff was of full age. In the case of McRoberts v. Carneal, 44 S. W., 442, this court said. "While this court looks with extreme disfavor upon purchases by fiduciaries of their cestuis que trustent, in this case the sale by one party was not to the trustee, but to an outsider, and the other party had slept too long upon his rights." In the case of Covington & Lex. Ry. Co. v. Bowler's Heirs, 9 Bush, 483, this court said: "The cause of action, if one exists, accrued when Bowler finally and decisively repudiated the claim of appellant and asserted title in himself. The limitation to actions of this character is five years." Under the rule laid down in the authorities cited, the cause of action accrued at once to appellant upon the execution by him of the deed to his uncle Matthias Miller.

Appellant had no right or claim to an accounting until he could succeed in having the sale of his interest in his uncle's estate set aside as a fraudulent transaction. By the terms of his deed he had parted with whatever interest he had in the estate of his uncle James Miller, both real and personal. As long as that deed stands uncanceled, it is a binding contract upon appellant, and he is estopped from claim-

ing or asserting any interest in the estate of his uncle James. Appellant charges that the deed was procured through fraud and deception practiced upon him by his uncle, who was his agent, and in whom he had great confidence. For wrongs of this character the law affords adequate relief if one feeling himself aggrieved does not "sleep too long upon his rights." The statute (section 2519, Ky. Stats., 1903), says that the extreme limit of this delay may be 10 years, and that, after the lapse of that length of time, no action can be successfully maintained for such relief. The wrong complained of, if any, was done on February 20, 1892. Appellant failed to complain until the 26th of April, 1904, more than 12 years after the date of the alleged wrong. Appellee responds in his answer to the original petition, and, in addition to traversing the allegations of the petition, pleads and relies upon the statute of limitations in such cases made and provided. In this answer the question is squarely raised, and appellant joined issue thereon. This traverse of the plea of statute of limitation is bad; it interposes no real defense to the plea. The court should have overruled the demurrer to the petition as amended, as this court has recently, in the case of Swinebroad et al. v. Wood et al, 123 Ky. 664, 29 Ky. Law Rep., 1202, 97 S. W., vol. 1, p. 25, held that the statute of limitations cannot be reached by demurrer. But, as the reply to the plea of the statute of limitations was bad, the court should have, on the pleadings as a whole rendered the judgment which he did, and dismissed the petition.

The judgment is affirmed.

Petition for rehearing by appellant overruled.