## Harvey v. Bank of Marrowbone.

(Decided January 25, 1918.)

### Appeal from Cumberland Circuit Court.

1. **Banks and Banking—Assignment of Stock Certificate—Issual of New Certificate.**—Where the holder of a certificate of bank stock assigned and delivered it to a third person, who in turn surrendered the certificate and obtained a new certificate in his own name, the bank that issued the new certificate did not receive or hold the surrendered certificate in trust for the original holder who had assigned it to the third person.

2. **Trusts—Limitation of Actions.**—In a suit to declare and enforce an implied or constructive trust, the cause of action accrues when the alleged trustee finally and decisively repudiates the alleged trust and asserts title in himself.

3.    Trusts—Limitation of Actions.—The limitation in actions to declare and. enforce an implied or constructive trust, is five years.

C. B. HICKS and BAIRD & RICHARDSON for appellant.

P. SANDIDGE for appellee. ·

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

This is an appeal by J. B. Harvey from a judgment of the circuit court dismissing his petition in which he asked that the Bank of Marrowbone be required to issue him a certificate for five shares of its capital stock, and to account to him for the dividends on five shares of its stock from April 29th, 1903. Harvey's claim grew out of the following facts: In 1903 the Bank of Cumberland and the Burkesville Banking Company were rival banks, doing business in Burkesville, and the Bank of Marrowbone was conducting a banking business at Marrowbone, in the same county. C. W. Alexander was president of in Bank of Cumberland, and S. J. Pace was the cashier of the Bank of Marrowbone.

Upon the organization of the Burkesville Banking Company, prior to 1903, it was agreed among its promoters that no one of them should own more than five shares of stock. E. B. Pace, subscribed and paid for five shares of stock and requested appellant Harvey, his nephew, to subscribe for five additional shares in his own name, Pace stating that he would pay for them. This was done; Harvey subscribed for the stock, and Pace paid for it.

Alexander, the president of the Bank of Cumberland, originated a plan to obtain control of the Burkesville Banking Company for the purpose of liquidating its affairs and thus remove the competition to the Bank of Cumberland. The principal feature of this plan consisted in Alexander's buying quite a block of stock of the Bank of Marrowbone and exchanging it for stock in the Burkesville Banking Company, share for share.

E. B. Pace approved the exchange; and, on April 29th, 1903, he assigned his certificate for five shares; had Harvey assign his certificate for five shares; and E. B. Pace delivered both certificates to S. J. Pace, the cashier of the Bank of Marrowbone, and received in lieu thereof a certificate in his own name for ten shares of stock in the Bank of Marrowbone. No question was made by Harvey at the time, as to E. B. Pace's ownership of

all the stock, and E. B. Pace so treated it, held it, and collected the dividends thereon until his death in April, 1915, a period of about twelve years.  S. J. Pace, the cashier of the Bank of Marrowbone, who acted for Alexander alone and not for the Bank of Marrowbone in this transaction, died in 1905.  J. E. Williams, the cashier of the Burkesville Banking Company, is also dead.

On May 20th, 1916, thirteen years afterwards, Harvey instituted this action for the purpose above indicated against the Bank of Marrowbone, claiming that the bank held the five shares of stock for him as a continuing trust.  It is not alleged that the appellee knew of Harvey's claim to the stock at the time it issued the new certificate to E. B. Pace.

The first paragraph of the answer is a traverse of the petition.  In its second paragraph the Bank of Marrowbone alleged that Harvey was not the owner of the stock; that he held it in trust for his uncle, E. B. Pace, and surrendered it to him; that he in turn surrendered it to the bank properly endorsed by Harvey and that new stock was issued in lieu thereof to E. B. Pace; and that the transaction, which was thus closed, ended any trust relation that might have existed between Pace and Harvey, or between Harvey and the bank.  In its third paragraph the bank alleged that it was not a party to the transaction by which the stock standing in Harvey's name was transferred to Pace and that it is not liable after E. B. Pace appropriated it; and in the fourth paragraph the answer pleads the statutes of five years' limitation and ten years' limitation.

The circuit court rested its decision dismissing the petition upon the statute of limitations.  It also might well have rested it upon the facts of the case which show beyond a doubt that Harvey never really owned the stock and that it belonged to his uncle who paid for it and took it in Harvey's name as a matter of convenience and out of respect for the agreement made with the other promoters of the Burkesville Banking Company. Harvey's claim that the bank has held these five shares of stock for him as a continuing trust since 1903, is not sustained by any competent evidence.

The appellee not only issued a new certificate for the stock in question to E. B. Pace on August 23rd, 1903, but Harvey knew that fact at the time, or shortly thereafter, and made no complaint or claim whatever for more

than twelve years, and until after the death of E. B. Pace, S. J. Pace and J. E. Williams.

When Harvey was asked why he did not go to the Bank of Marrowbone and demand the five shares of stock which he claimed to own, he gave as an excuse for not doing so, that he thought "there had been something crooked about it." If he had really thought there was something crooked about the transaction, that constituted a good reason for his asking about it and demanding the stock, rather than an excuse for not doing so. He assigned the certificate of stock and admitted he knew at the time that the bank had issued stock to someone else; nevertheless he made no investigation of his alleged claim. The testimony of C. W. Alexander that S. J. Pace represented Alexander alone in the transaction is not contradicted. The certificate was regularly assigned by Harvey and the Bank of Marrowbone did not know him in the transaction.

Under the proof appellant's contention that the Bank of Marrowbone held the stock in trust for Harvey is wholly without merit.

Furthermore, any claim that Harvey might have had was clearly barred by limitation.

In Covington & Lexington R. Co. v. Bowler's Hrs., 9 Bush 468, the court said: "It is a suit to declare and enforce an implied or constructive trust. The cause of action, if one exists, accrued when Bowler finally and decisively repudiated the claim of appellant and asserted title in himself. The limitation to actions of this character is five years." See also Jolly v. Miller, 124 Ky. 113; and Mercer County Court v. Springfield, Maxville & Harrodsburg Turnpike Co., 10 Bush 255.

If, by any stretch of the imagination, it could be said that the appellee received the certificate in trust for Harvey, it is clear that the trust ended when the appellee issued the new stock to E. B. Pace in 1903. That was a repudiation of Harvey's ownership of the stock (if he really owned it) and a recognition of E. B. Pace's ownership, in which Harvey acquiesced. The statute, therefore, began to run in April, 1903.

Appellant waited more than a dozen years before making a claim or bringing this action. In the meantime E. B. Pace and S. J. Pace, the two persons who knew all about the transaction, had died. If the appellant had any valid claim to the stock in question it is in-

deed surprising that he did not assert it during the lifetime of his uncle who had paid for the stock, and to whom appellant had surrendered it in 1903.

Moreover, the appellee was not a party to the transaction between Harvey and E. B. Pace. The appellee was fully justified in issuing the new certificate to E. B. Pace, pursuant to the assignment of Harvey; and, if Harvey had any claim for a conversion of the stock it was against E. B. Pace, and not against appellee.

Under any view of the case, Harvey's claim is without merit.

Judgment affirmed.