## West v. W. T. B. Williams & Sons, Bankers.

(Decided March 11, 1924.)

### Appeal from Estill Circuit Court.

1. Bills and Notes—Liability of Assignor of Note Held for Jury.— In an action by holder against assignors of note, question of liability of one of defendants held for the jury, and their verdict against him was not so flagrantly against the evidence as to indicate passion or prejudice.

2. Limitation of Actions—Recovery Must be Had Upon New Promise, if Made After Bar is Complete.—Suit must be on the new promise, if made after bar of limitations is complete as to note.

3. Limitation of Actions—Must be Pleaded as Defense.—To be available as a defense, the statute of limitaitons must be pleaded.

4. Limitation of Actions—Plea Personal and Can be Made Only by Obligor.—Plea of statute of limitations is a personal one, and can be made by no one but the obligor.

5. Limitation of Actions—Original Obligation Not Dead where Statute Not Interposed.—Although statutory bar is complete, unless the plea of the statute is interposed by the obligor, judgment

will go for the original obligation, which in such a state of case is not considered. as dead.

6. Limitation of Actions—Effect of New Promise on Recovery of Interest.—As a new promise after running of limitations creates a new obligation, it may be restricted to the payment of any part of the original obligation, but an unconditional promise to pay the indebtedness includes the unpaid interest, which is an integral part of the note and is carried with it, unless segregated by agreement, just as such interest would be recovered on a note barred by the statute in the absence of a plea of that character.

7. Appeal and Error—Exclusion of Evidence Otherwise Admitted Held Not Prejudicial.—The sustaining of objection to a question was not prejudicial error, where a similar question was asked another witness in a manner similar to the avowal and much more elaborate and this without any contradiction.

JOHN D. CARROLL and CHESTER GOURLEY for appellant.

GRANT E. LILLY for appellee.

Opinion of the Court by Judge McCandless—Affirming.

The banking firm of W. T. B. Williams & Son sued G. W. Gourley and J. F. West as assignors. It was alleged that one Roberts on the 22nd day of July, 1907, executed a note for the sum of $2,500.00 payable to G. W. Gourley and J. F. West six months after date, with interest from date; that Gourley and West sold that note to plaintiff, endorsed their names on the back of it and guaranteed payment thereof, and that no part of the note has ever been paid, but in some way it had been lost or mislaid and could not be produced; that at the request of the defendants it had from time to time granted them forbearance, and they had repeatedly and within the twelve months last past as well as before that date agreed and promised to pay same with interest; it also being averred that it had promptly notified the defendants of Roberts' failure to pay.

The plaintiffs pleaded *non est factum* as to the alleged endorsement and the statute of limitation. In a jury trial a peremptory instruction was given and a verdict returned in accordance therewith in favor of Gourley, but under regular instructions there was a verdict and judgment in favor of plaintiff against West for the amount of the note with interest from date.

West appeals and insists that the verdict is flagrantly against the evidence. It is shown that at the time

of the transaction the bank's business was conducted by two brothers, Tom and W. P. Williams. The former is dead. The latter testifies that he negotiated this note with the defendants and describes it as above set out, except the endorsement which read, "For value received we transfer the within note to W. T. B. Williams & Son." He says that the note was regularly discounted and deposited to the credit of defendants on the books of the bank and checked out by them; that later he mailed the note to a Louisville bank as collateral security for a loan extended to his bank, and that it was never returned or paid; that he notified the defendants of non-payment and later had frequent talks with West in reference to it; that West was in straitened circumstances and that he granted him indulgence, but that West admitted it as his indebtedness and at all times promised to pay it, saying that he would endeavor to get Judge Gourley to pay his part, and if he did not he would pay it all himself. He states that at the time he mailed the note to Louisville he kept a copy of the face of the note but did not think it essential to copy the endorsement on the back; this copy had been retained by the bank and given to his counsel when the claim was listed for collection and was by the latter filed with the petition and introduced in evidence. He also introduced the records of the bank, the same showing the original entry, serial number "3098," note of W. J. Roberts, $2,500.00 discounted on July 29, 1907, and that the discount thereon was $51.66; also that the interest collected on note of J. F. West was $61.50. The register of discounted bills also shows a bill discounted on that date, "No. 3098, W. J. Roberts, $2,500.00."

W. P. Williams states that he made the above entries and entered the serial number "3098" on the note in question. He also introduced in evidence two deposit tickets made out in his brother's handwriting and dated July 27, 1907. One to the credit of G. W. Gourley, written "Int. in note $1,000.00," the other in favor of J. F. West and written "Balance on note $1,448.34," it appearing that these two deposits together with the item of discount in W. J. Roberts' note, $51.66, amounts to the sum of $2,500.00. He further introduced in evidence the original entries in the deposit accounts of Gourley and West which showed that on the 29th day of July, 1907, West had a deposit credit of $1,448.34, and Judge Gour-

ley, two deposit credits, one for $1,500,00 and the other for $1,000.00, and that on the same date Judge Gourley gave a check for $1,061.50 in payment of "J. F. West note and interest." The account also showed that the deposits were checked out by them.

As attorney for plaintiff, Judge Lilly testified that this, together with other claims for collection was given him five or six years before, and that he notified both the defendants. He at the time was living in Lexington but visited Irvine at the terms of court and there saw West and had a number of conversations with him; that he always admitted owing this indebtedness and said that he would endeavor to induce Judge Gourley to pay his part, but that if he failed that he (West) would pay it all; that the last conversation with him was about a year before suit was filed.

The deposit slips were dated July 27th, while the entries were made on the 29th. Discounts naturally precede deposits, but it is explained that the transaction took place on Saturday, July 27th, and on account of the stress of the work the entries were not made until the 29th. The note was charged off the bank books several years since, but Mr. Williams states that the only reason for this was that the bank examiner required it to be done.

Judge Gourley lived at Beattyville and witness did not see him often though he wrote both him and West when he first received the notes. Neither Lilly nor Williams claims that Judge Gourley ever admitted the indebtedness.

The defendants denied the transaction outright; denied that they ever had any partnership or joint interest with each other; denied that Roberts ever made to them a joint note or that they ever discounted such a note at the bank. However they admitted that in some transactions they had several interests in the same property. West admits that he agreed to pay Judge Lilly for some note, but says that that was on notes executed by him to the Poplar Lumber Co., and also signed by J. W. Roberts.

It appears that Judge Gourley was a prominent lawyer and business man of Beattyville who had large interests throughout that part of the state and did an extensive business outside of his practice and that he was at all times solvent and could have taken up this note at any time.

West had been sheriff of Estill county, was extensively engaged in many business enterprises and through the development of the oil industry has become wealthy, but it seems that during a considerable part of this time he was in straitened circumstances, and while he could have met this obligation, its enforced collection might have proved embarrassing to him.

We confess that this is a puzzling case and for that reason have elaborated the facts. The bank was organized with a capital stock of $15,000.00, but is now said to carry $1,000,000.00 on deposit, showing that it must have been managed by able and astute business men, and considering the prominence of defendants it is almost inconceivable that such bankers would permit an indebtedness of this kind against solvent and reliable men to be charged off its books and drag along for a period of thirteen years before bringing suit.

On the other hand no imputation is suggested against the integrity of the entries on the books of the bank and the testimony of its president is as direct and certain in favor of the claim as is the evidence of Gourley and West to the contrary, and in this he is corroborated largely by Judge Lilly.

There was sufficient evidence to authorize a submission of the issue to the jury and we cannot say that their verdict was so flagrantly against the evidence as to indicate passion or prejudice.

It is strongly urged that even if the verdict of the jury should be upheld that it was improper for the court to allow interest from date, but that if judgment was entered at all it should bear interest only from the date of the new promise; that as the note was barred by the statute of limitation before the promise was made and is to be regarded as dead, that it was not revived by the new promise and therefore the promise covered nothing but the original note. Carr's Exor. v. Robinson, &c., 8 Bush 269; Gilmore v. Green, 14 Bush 772; McCracken County v. Mercantile Trust Co., 84 Ky. 344. Those opinions are authority to the extent of holding that the suit must be on the new promise if made after the bar is complete.

On the other hand the later opinions are uniform in holding that to be available as a defense the statute of limitation must be pleaded. Swinebroad v. Wood, 123 Ky. 664; Jolly v. Miller, 124 Ky. 100; Yager's Admrx.,

v. Bank of Ky., 125 Ky. 177; Green County v. Howard, 127 Ky. 379; Fields v. Walker, 174 Ky. 461; Merritt v. Cravens, 168 Ky. 155; Davidson v. Ky. Land Co., 180 Ky. 121; Smith v. Young, 178 Ky. 376; Taulbee v. Hargis, 173 Ky. 433.

Further, that the plea is a personal one and can be made by no one but the obligor. Hyden v. Calames, 161 Ky. 593; Baker v. Begley, 155 Ky. 234.

So that although the statutory bar is complete unless the plea of the statute is interposed by the obligor judgment will go for the original obligation, which in such a state of case is not considered as dead.

Perhaps each of these theories is too well established as the law of its particular sphere to permit a departure at this date and in this case it is unnecessary to attempt to harmonize them. As the new promise creates a new obligation, it could be restricted to the payment of any part of the original obligation; but when it is not so restricted an unconditional promise to pay the indebtedness naturally includes the unpaid interest which is an integral part of the note and is carried with it unless segregated by agreement, just as such interest would be recovered in a suit on a note barred by the statute in the absence of a plea of that character.

Objection was sustained to a question asked by Judge Gourley and avowal made as to his answer. A similar question was answered by J. W. West in a manner similar to the avowal and much more elaborately and this without any contradiction. If an error we do not think this prejudicial to appellant's substantial rights.

Wherefore judgment is affirmed.