## Sovereign Camp Woodmen of the World v. Landrum, et al.

(Decided May 13, 1914.)

## Appeal from Trigg Circuit Court.

1. Insurance, Life—Action Upon Policy—Burden of Proof.—In an action upon an insurance policy where the plaintiffs set up the suicide provision in the policy, and admitted that deceased came to his death by his own hand, but alleged that at the time he was irresponsible by reason of his mental condition, and the denial of these allegations in the answer being the only issue, the burden of proof was upon the plaintiffs. ·

2.  Insurance, Life—Suicide Provision of Policy.—A suicide pro-
    vision in a policy will be enforced only when the insured at
    the time of the self-destruction had mind enough to know he
    was taking his life or that his act would probably so result.
3.  Insurance, Life—Suicide of Insured—Verdict—Evidence.—In an
    action by the beneficiaries in a policy of insurance where the
    insured came to his death by his own hand the evidence is con-
    vincing that insured was so bereft of reason as to relieve him
    from the consequences of his act and is sufficient to sustain
    the verdict in favor of the beneficiaries.

COLEMAN & WELLS for appellant.

C. H. BUSH and KELLY & KING for appellees.

OPINION OF THE COURT BY JUDGE TURNER—Affirming.

In 1910 Alfred Wallis, upon his application, was
granted a beneficiary certificate for $1,000.00 in the Sov-
ereign Woodmen of the World, his three sisters, the ap-
pellees, being designated as beneficiaries therein.

He paid all dues and assessments, and died a mem-
ber in good standing on May 16th, 1912.

In due time after his death the beneficiaries furnished
proper proof of death, and demanded payment, which
was refused; whereupon they instituted this action on
the certificate.

One of the provisions on the back of the certificate,
which is referred to in the fact thereof, is that:

"If the member holding this certificate ............................
should die ............................ by his own hand or act whether
sane or insane ............................ this certificate shall be null
and void and of no effect, and all moneys which shall
have been paid, and all rights and benefits, which shall
have accrued on account of this certificate shall be abso-
lutely forfeited without notice or service;" and a simi-
lar provision is in the constitution and bylaws.

The plaintiffs in their petition allege affirmatively
that the decedent came to his death by his own hand,
but that at the time his mind was unbalanced and he was
so far bereft of reason as not to know what would be
the consequence of his act, or that it would probably re-
sult in death or bodily injury, and that he was not at the
time in such condition as to be mentally responsible for
his act.

The only issue of fact made by the first paragraph
of the answer is a denial of the allegation as to the men-
tal condition of Wallis at the time he killed himself;

but in a second paragraph it is pleaded affirmatively that at the time he took his life he had mind enough to know that the act would probably result in death or bodily injury, and that he committed it with the purpose that it should do so, which latter allegation was duly denied by reply.

Upon the issues so raised the case came to trial and resulted in a verdict and judgment for the plaintiffs for the amount of the policy.

The first ground relied upon for reversal is that appellant, under the pleadings, should have been given the burden of proof and consequently the closing argument; and a class of cases relied upon in support of this contention wherein the companies defended upon the ground of suicide, and where the issue necessarily was whether or not the decedent had died by his own hand or from accident or casualty. Clearly in those cases it was incumbent· upon the company to establish the suicide.

Sec. 526, Civil Code, provides:

"The burden of proof in the whole action lies on the party who would be defeated if no evidence were given on either side."

So that it is manifest that in the class of cases referred to, in the absence of evidence to sustain their allegation of suicide, they would have lost.

But in this case the plaintiffs themselves set up the suicide provision of the policy and expressly admit that the decedent came to his death by his own hand, and avoid that fact by the further affirmative allegation that he was at the time irresponsible by reason of his mental condition; and these allegations being denied in the answer made the only real issue in the case. The additional allegation in the second paragraph of the answer as to the decedent's mental responsibility at the time of the act added nothing to appellant's answer, and made no issue which had not been made by the denial in the first paragraph, and was in fact nothing more than an affirmative denial of the allegations in the petition. Clearly under this state of the pleadings, if no evidence had been introduced, the plaintiffs having the affirmative on the question of mental responsibility, would have lost.

The court upon the main examination of the two sisters of the decedent, who were beneficiaries, declined to permit either to testify to anything which occurred be-

tween them and the decedent immediately before his death, or as to how he looked or acted, or anything bearing upon his then mental condition; but, upon the cross-examination of one of the plaintiffs' other witnesses, appellant introduced in evidence a written statement made by the witness to the effect that Mrs. Overby, one of the beneficiaries, had told him that the decedent raised up in bed, reached out his hand and told her good-bye, and said he was going to kill himself, and that she had made certain other statements bearing upon the mental condition of the decedent immediately before he shot himself. Thereafter the court permitted Mrs. Overby to testify that no such conversation as detailed in the statement occurred, and to state that the decedent at the time looked wild out of his eyes, and that he muttered a few words that she did not understand. The witness did not undertake to detail any conversation with the decedent, for she distinctly said there was none, but was only permitted to say that the alleged conversation referred to in the statement introduced by the defendant did not take place, and that she had not said to anyone that it did.

The case of Metropolitan Life Ins. Co. v. Thomas, 32 R. 770, was an action to recover on a life policy wherein the company defended on the ground that the insured had died by his own hand; in that case it was held that the wife, who was the beneficiary in the policy, was a competent witness to testify as to the circumstances surrounding her husband at the time of his death, and as to how much mind he had on the day he took his life. See also Fidelity & Casualty Co. v. Cooper, 137 Ky., 544.

It is now the well recognized rule in this State that such a suicide provision in a policy will be enforced only when the insured at the time of the self-destruction had mind enough to know he was taking his life, or that his act would probably so result.

This is based upon the idea that the act of one who is so far mentally unbalanced as not to know or realize the inevitable consequences of his act, cannot be said to have died by his own hand, but really by accident.

Southern Life Ins. Co. v. Boyd, 124 S. W., 333, and authorities there cited.

The contention that there should have been a peremptory instruction given because the evidence failed to show such mental irresponsibility as would relieve the decedent from the consequences of his own act cannot be

sustained. The evidence is convincing that for several days before his death the decedent had acted strangely and that for the last two days before his death he had locked himself up in his home and refused to permit anyone to enter, and that when his sister finally did enter his room by climbing through the window he immediately raised himself up in bed and shot himself. There was ample evidence to sustain the verdict, and as there is no complaint of the instructions, the judgment is affirmed.