## Brogan, et al. v. Porter, et al.

(Decided November 28, 1911.)

### Appeal from Webster Circuit Court.

1. Land—Sale of—Written Contract Lost—Action to Enforce and Cancel Subsequent Deed.—In an action by the children of a second wife to cancel a deed made by their father to a son by his first wife and to enforce the performance of a lost written contract, by which their father had conveyed the land in question, to them and their mother to take effect at his death, evidence examined and held sufficient to sustain the chancellor's finding in favor of plaintiffs.

2. Innocent Purchaser—Pleading.—A petition in an action to set aside a deed on the ground that the grantor had previously conveyed the land is not defective because of a failure to allege that the grantee in the deed attacked had notice of the previous conveyance. That one is a purchaser for value without notice is a matter for defense.

3. **Attorney—Witness.**—An attorney who represents both parties is a competent witness for either party.

C. W. BENNETT, S. V. DIXON and G. H. TOWERY for appellants.

BOURLAND & HUNT, BAKER & BAKER for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

On September 19th, 1910, T. P. Brogan conveyed to his son, G. W. Brogan, by deed of the date a tract of land in Webster County, Kentucky, containing 123 7-8 acres. Appellees, Sarah Porter and D. C. Porter, her husband, D. Webb Brogan, R. M. Brogan and E. N. Brogan brought this action against appellants, T. P. Brogan, G. W. Brogan, J. A. Brogan and others, to have the foregoing deed set aside to the extent of 76 1-2 acres embraced therein, on the ground that T. P. Brogan had previously conveyed the latter tract to appellees and their mother, Mary D. Brogan, which conveyance was to become effective on the death of T. P. Brogan. It was charged in the petition that the consideration for said written agreement was natural love and affection which T. P. Brogan had for appellees, and the further consideration that their mother would sign and acknowledge a deed waiving all her right, title, claim and interest in and to a certain tract of 40 acres of land which T. P. Brogan, on June 4th, 1894, conveyed to his son, G. W. Brogan. The latter deed was signed and acknowledged by Mary D. Brogan. It was further charged in the petition that the contract of sale was lost. Appellees asked that T. P. Brogan and G. W. Brogan be directed and required to make, execute, acknowledge and deliver a deed to appellees conveying the 76½ acres in controversy, subject only to the life estate of T. B. Brogan, or, upon their failure to do so within a reasonable time, that the court direct the master commissioner to execute such a deed for and on their behalf. A demurrer to the petition was overruled. Appellant then answered denying the allegations of the petition, and G. W. Brogan pleaded that he was an innocent purchaser for value without notice. The affirmative allegations of the answer were denied by reply. Upon submission of the case the court rendered judgment in favor of appellees. From that judgment this appeal is prosecuted.

According to the evidence of Mrs. Sarah Porter, one of the appellees, she saw a writing, signed by her father, wherein he was party of the first part, and her mother, Mary D. Brogan, party of the second part. This writing conveyed 76½ acres of land, the home place, to her mother and her children. The contract gave the boundary of land and stated that the consideration was that she would sign away her right to a tract of 40 acres of land which her father desired to give to his children by his first wife. The writing was also signed by her mother, and was attested by W. E. Bourland. Witness heard her mother and father discuss the contract. Her mother told her father that she would not sign away her right to the 40 acre tract unless he made a contract giving her and her children the 76 acres. Her mother and father went to Dixon for the purpose of having the deed and contract drawn. When they returned from Dixon, her mother, in the presence of her father, told witness that this was the contract in black and white; whereupon her father remarked that it was only just, as he had nothing when he and her mother were married but a house full of children. Witness saw this contract on several occasions. There was nothing in it to indicate that it was a will.

R. M. Brogan and E. N. Brogan also testified to seeing the contract in question, and corroborated Mrs. Porter as to the effect thereof.

W. E. Bourland, an attorney, testified that he had a distinct recollection of Mr. T. P. Brogan and his wife coming to his office a number of years ago; that at that time T. P. Brogan desired to make advancements to his children by a former wife. Mrs. Brogan objected to signing the deed unless he would provide for her and her children. Thereupon he drew the deed from T. P. Brogan and wife to G. W. Brogan, and at the same time drew a contract between Mr. Brogan and his wife, by which Mr. Brogan agreed that Mrs. Brogan and her children should have the home place at Mr. Brogan's death. His recollection of the transaction was that the contract was in effect a deed. His testimony was competent, as he represented both Mr. and Mrs. Brogan. The rule is that an attorney who represents both parties is a competent witness for either. (Taylor v. Roulston, 22 R. 1215; Smith v. Beswick, 113 Ky., 439.)

For the appellants, T. P. Brogan denied that he ever executed any contract by which he sold the home

place to his second wife ·and her children, but said that sometime in September, 1894, he executed an instrument in writing, by which he willed to his second wife and her children about 47 acres of land. This will was prepared by Mr. Bourland, and he paid the latter $5.00 for his services. Subsequently he destroyed this will, because of a change of circumstances.

Mrs. Crowley, a daughter of T. P. Brogan's first wfe, testified that she saw the will referred to by her father, and that her father burned the same in the year 1905. The will was attested by Mr. Bourland and Mr. Towery.

G. W. Brogan, to whom the deed of September 19th, 1910, was made, testified that his father conveyed him the 76½ acres of land in controversy and the 46⅜ acres in addition thereto, in consideration of his agreeing to take care of his father for the remainder of his natural life. His father, at the time he testified, was living with him and he was carrying out the agreement. At the time he received the deed, he knew nothing of any contract by which his father had formerly conveyed th land to appellees. At the time, however, that his father made to him the deed to the 48 acres of land, in the month of June, 1894, he was living in the house with his father and stepmother. He claims that his stepmother, Nancy B. Brogan, did not object to the signing of the conveyance, but thought it was the very thing for his father to do. Of the consideration, his father received $81.35, while the balance was to go to him and his brothers. Witness also testified that the land in controversy was the result of his and his brother's labor, and not of appellees.

Mr. Towery stated that, at one time (he could not remember the year or the month), T. P. Brogan came to his office to have a will drawn. The will was drawn and he and Mr. Bourland attested it as witnesses.

For appellants it is insisted that the petition is defective because it failed to allege that G. W. Brogan had notice of the written agreement between T. P. Brogan and appellees. It was not necessary to charge this in the petition. The plea of being an innocent purchaser for value without notice is a defense which must be pleaded. While it is true that G. W. Brogan denied that he had knowledge of the contract in question, it does appear that he was living in his father's home, and that he and his father discussed for a period of ·two or three

weeks the matter of the conveyance of the 40 acres deeded to him in the month of June, 1904, and as the weight of the evidence is to the effect that Mrs. Brogan refused to sign the deed unless her husband conveyed to her and her children the home place, we see no reason to disturb the finding of the chancellor upon the question of notice, as the facts above referred to are such that notice should be reasonably inferred therefrom.

As to the existence of the written contract by which the home place was conveyed to appellee, we have the testimony of four witnesses on the one side, and that of T. P. Brogan on the other. While it is true that two other witnesses testified to having seen the will, proof of the existence of the will does not tend to disprove the existence of the contract. When we consider the relation of the parties and the fact that T. P. Brogan desired to make advancements to his children by his first wife, and the natural disinclination of his second wife to sign away her rights in the property proposed to be given unless provisions were also made for her and her children, coupled with the direct testimony of several witnesses to the existence of the contract by which such provision was made, we are not disposed to disturb the finding of the chancellor.

Judgment affirmed.