## Interstate Businessmen's Accident Association, of Des Moines, Iowa v. Atkinson.

(Decided June 18, 1915.)

### Appeal from Nelson Circuit Court.

Insurance—Accident Insurance—Suicide Clause.—The policy of insurance provided that the "Association shall not be liable for

the payment of any sum whatsoever if such injury be sustained at a time when the member is: (1) insane; (2) not in the present, full possession and normal exercise of all his faculties." The insured killed himself at a time when he was so insane as not to be able to understand the nature or quality of the act he was committing. Held, that the association was not liable on the contract of insurance.

R. M. HAINES, DUNSHEE & HAINES and DALLAM, FARNSLEY & MEANS for appellant.

JOHN A. FULTON, N. W. HALSTEAD, J. S. KELLEY, E. N. FULTON and G. S. & J. A. FULTON for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The appellant, the Interstate Businessmen's Accident Association, of Des Moines, Iowa, is an Iowa corporation, licensed to do an accident insurance business in Kentucky. For brevity it will be called the association in this opinion.

On April 10th, 1913, the association issued a certificate of membership to Allen R. Atkinson, whereby it agreed to pay the appellee, Mary Gore Atkinson, wife of Allen R. Atkinson, the sum of $5,000.00 in the event Allen R. Atkinson should lose his life on account of bodily injuries, sustained by him while engaged in the occupation of a court reporter, and effected directly and independently of any other contributory, concurring or intervening cause, by external, violent and accidental means.

This action was instituted to recover upon the policy; and, after narrating the above facts, the petition, in order to raise all the questions upon demurrer, also set forth the provision of the certificate of insurance relating to excepted risks, namely:

"The association shall not be liable for the payment of any sum whatsoever if such injury be sustained at a time when the member is: (1) insane; (2) not in the present full possession and normal exercise of all his faculties; (3) engaging in any act in violation of any law or ordinance."

The petition further alleged that on February 2nd, 1914, Allen R. Atkinson lost his life on account of bodily injuries sustained by him from external, violent and accidental means; that said injuries resulted in the immediate and instantaneous death of Allen R. Atkinson; that Allen R. Atkinson shot himself through the heart

with an army rifle; and "at the time of said shooting and death he was so insane, and his mind was so unbalanced, and his. reason so impaired, that he was not able to understand the nature or the character of the act he was committing, and was not conscious of the fact that he was making an attempt to take his life, or that the act would result in his death."

The association demurred generally to the petition; and, in support of the demurrer, it insisted that by its contract the association did not insure against every, or indeed, any injury sustained by Allen R. Atkinson at a time when he was insane, or when he was not in the present full possession and normal exercise of all his faculties; and further, that since the petition showed upon its face that Allen R. Atkinson's injuries were sustained at a time when he was insane and not in the present full possession and normal exercise of all his faculties, it failed to state a cause of action.

The trial court overruled the demurrer to the petition, and the association standing by its demurrer, the appellee was given judgment for the sum of $5,000.00, called for by the certificate. From that judgment the association prosecutes this appeal.

The ruling of the trial court was controlled by the decisions of this court in the cases of Mutual Benefit Life Ins. Co. v. Daviess, 87 Ky., 541; Manhattan Life Ins. Co. v. Beard, 112 Ky., 455; Supreme Council Knights of Equity v. Heineman, 25 Ky. L. R., 1604; Masonic Life Assn. v. Pollard, 121 Ky., 349; Metropolitan Life Ins. Co. v. Thomas, 32 Ky. L. R., 770; Bankers' Fraternal Union v. Donahue, 109 S. W., 878; Inter-Southern Life Ins. Co. v. Boyd, 124 S. W., 333; Vicars v. Aetna Life Ins. Co., 158 Ky., 1; Sovereign Camp Woodmen of the World v. Landrum, 158 Ky., 841.

In each of these cases it was held that notwithstanding a clause in the policy exempting the insurer from liability if the insured, at the time he killed himself, was insane, the company would, nevertheless, be liable, if the insanity was so complete as to destroy the capacity of the insured to understand the nature of his act. In view of the rule announced in these cases, and for the purpose of pointing out what we conceive to be a substantial difference between the "suicide clause" before the court in the cases mentioned and the "suicide clause" involved in the case now before us, it may be

well to set out the exact wording of the clauses in each of the cited cases and the grounds upon which the decisions were rested.

In the Daviess case the clause read: "That in case the insured shall die by his own hands * * * then this policy shall be null and void, except that in case he shall die by his own hand while insane, the amount to be paid by the company on this policy shall be the amount of the premiums actually paid thereon, with the interest." And the court said that "if the insured fired the fatal shot, and had sufficient mental power at the time to know that it would take his life, and fired the pistol with that intention, the recovery in this case is limited to the premiums paid with the interest; while, on the other hand, if the firing of the pistol was not intentional, because of the unconsciousness on the part of the insured that such an act would take his life, the recovery must be had of the principal sum. The shooting in such a case must be regarded as the result of accident, as much so as if the pistol had gone off unexpectedly to the insured and killed him."

In the Beard case the policy contained this provision: "If within two years the insured die by his own act, sane or insane, this policy shall be void." In considering the liability of the company the court followed the rule laid down in the Daviess case.

In the Heineman case the policy provided that the company should not be liable if the insured came to his death "by suicide, whether sane or insane," and the court held the company liable upon the ground that when he took his life he was so insane as not to be conscious of the nature or quality of the act.

In the Pollard case the policy condition was that if the insured should "die by his own hand or act, sane or insane," the policy should be of no effect, and the court said: "If the insured intentionally took his own life, at a time when his mind was so far gone as to render him unconscious that he was taking his life, the act will not be deemed his, but will be regarded in law as an accidental killing."

In the Thomas case the condition was that "if the insured, within two years from the issue hereof, die by his own hand or act, whether sane or insane, the policy should be void, except to the extent of the premiums paid." Again the court said that if the mind of Thomas

at the time he killed himself was so far gone as to render him unconscious that he was taking his own life, the company was liable.

In the Donahue case the provision was that "in case of the death of a member by suicide, while sane or insane, during the first ten years of membership" his beneficiary should be entitled to receive only one-tenth of the face of the policy, and the company was held liable upon the ground that the insured at the time he killed himself was totally insane and hence his self-destruction was accidental.

In the Boyd case the policy read: "In the event of the death of the insured by self-destruction, whether sane or insane, within one year after the issuance of this policy, * * * the liability of the company shall be only for the return of the premiums actually paid thereon;" and the court said that "if the insured, at the time he killed himself, was so insane that he did not know he was taking his life, or that the act he was committing would probably result in his death, the company would be liable."

In the Vicars case the policy exempted the company from liability if the insured committed suicide, sane or insane, and the court said: "We have repeatedly held that if the insured was so insane that he did not know that he was taking his life, or that the act that he was committing would probably result in his death, there may be a recovery upon the policy, although it provides that the insured shall not be liable in case of death by suicide, whether sane or insane."

In the Landrum case the condition was, "If the member holding this certificate should die by his own hand or act, whether sane or insane, this certificate shall be null and void and of no effect;" and the court said: "It is now the well-recognized rule in this State that such a suicide provision in a policy will be enforced only when the insured, at the time of the self-destruction, had mind enough to know he was taking his life, or that his act would probably so result."

It will be observed that in each of these cases the question whether the company was liable or not depended on the state of the mental condition of the insured at the time he came to his death by his own hand. And in each case the court ruled that if the mind of the insured was so unbalanced he did not know or appre-

ciate the nature or quality of the act he was committing; the company should be held liable, on the theory that the destruction of his life was accidental; while, on the other hand, if he had mental capacity sufficient to know or appreciate the nature or quality of his act, the deed was intentional and there could be no recovery on the policy.

But the exemption of the association from liability in the policy now under consideration does not depend at all on the mental capacity of the insured to under-stand or appreciate the nature or consequences of the act of self-destruction. It provides that if the injury resulting, as in this case, in death be sustained *at a time when* the member is insane, the association shall not be liable for the payment of any sum whatever. The in-tent of the insured in taking his life, or the want of in-tent, is not material, nor has his understanding or lack of understanding of the nature of the act or the conse-quences that might follow it, anything to do with the lia-bility or non-liability of the association.

In a suit such as we have to determine the liability of the insurer, the main inquiry is limited to the ascer-tainment of the mental condition of the insured at the time the injury is sustained and not to the ascertainment of the fact whether he did or did not understand the nature and consequences of his act. If he was insane within the meaning of the contract when the injury was sustained, no liability is incurred, although he may not have understood or appreciated the nature or conse-quences of his act. Under the clauses construed in the cases cited, the liability of the insurer depended on the mental capacity of the insured to understand the nature and consequences of the act he was doing. Under the clause here in question, the liability depends on the men-tal condition of the insured, unaffected by his ability or lack of ability to understand what he was doing.

The suicide clauses in the policies in the cited cases, as construed by the court, related to the mental state or condition of the insured at the time he took his own life only in so far as this mental state or condition af-fected his ability to understand the nature of the act; while in this policy the words in the clause exempt the company from liability for all injury, whether resulting in death or not, sustained by the insured during the period of time that he is insane. In other words, the

life of the policy here in question is suspended during the insanity of the insured, and during the time this mental condition continues there is no insurance in force. There being no insurance in force during this period, it is, of course, immaterial what cause produced the death of the insured, or whether he died by his own hand or at the hand of another person, or through or by some other agency, or instrumentality, or whether his death was the result of accident or intention, The words of the clause are not fairly susceptible of any other meaning, and a condition in a policy like this is not unreasonable, is not forbidden by law, nor is it against public policy.

As said by the Supreme Court of the United States in Bigelow v. Berkshire Life Ins., Co., 93 U. S., 284, 23 L. Ed., 918, in commenting on the meaning and effect of a suicide clause in an insurance policy: "But the insurers in this case have gone further, and sought to avoid altogether this class of risks. If they have succeeded in doing so, it is our duty to give effect to the contract, as neither the policy of the law nor sound morals forbid them to make it. If they are at liberty to stipulate against hazardous occupations or unhealthful climates, or death by the hands of the law, or in consequence of injuries received when intoxicated, surely it is competent for them to stipulate against an intentional act of self-destruction, whether it be the voluntary act of a moral agent or not. It is not perceived why they cannot limit their risks in any manner they see fit, provided the assured is told, in proper language, of the extent of the limitation and it is not against public policy."

It is entirely probable, as argued by counsel for the insured, that the clause here in question was written with the purpose of escaping the construction given by this and other courts to the usual suicide clause, but if this should be admitted, it does not affect the validity of the clause. If the association had the right, as it undoubtedly did, to limit its liability to certain times or places or to certain classes of risks, we do not know of any reason that would deny it the right to use words that would make plain its intention. In this policy the association said to the insured: "We will not be liable to you for any sum on account of any injury sustained by you at a time when you are insane," and we think it plain that the association had the right to insert this

condition in its contract. If the condition had read, "This association shall not be liable for any injuri s sustained by the insured while he is riding on a railroad train, or while he is riding in an automobile, or while he is riding in a steamboat, or while he is traveling outside of the United States," we think no question could be raised as to its validity or meaning. And so, if it had read, "The association will not be liable if the insured dies while intoxicated or from the effect of pneumonia or tuberculosis or typhoid fever," no objection could be raised to the condition.

We do not understand counsel for the insured to insist that conditions such as we have supposed might not be legally inserted in the policy, but the argument is that there is no substantial difference between this clause and the clauses in the policies heretofore considered by this court. It is said the difference between this policy contract and the policy contract in the Daviess and other cases is merely verbal, and manifestly an effort to evade by phraseology the construction placed by the court on the suicide clauses in these policies.

With this view we are unable to agree. The words in the clause in question mean, and were intended to mean, that the association should be exempt from all liability on account of injuries occurring during the time the insured is insane. It makes no difference how long this mental condition continues or what gave rise to it. The fact of its existence suspends during its existence the contract. This is what the contract provides, and this is what the parties to the contract agreed to.

The suicide clause in the policies heretofore before the court were confined to *acts* of self-destruction by the insured and did not purport and were not intended to exempt the company from any other accident or injury that might happen to the insured during the time he was insane. But the clause in this contract is much broader than this. The exemption from liability is not limited to acts of self-destruction or to any other particular act or injury or to any particular cause that may have produced the injury or accident. It marks out a period of time and provides for exemption from liability for any accident or injury that may happen during that period of time. In each of the other cases the contract attempted to exempt the company from liability only in case the insured should die by his own hand or by his

own act, whether sane or insane. In other words, these contracts dealt only with an act of the insured, while this contract makes no reference to the act of the insured. It relates to anything that may happen during a described period of time.

The wording of the clause is short and simple and easily understood, and we do not know of any principle of law that would authorize us to ignore the plain meaning of these words or give them a construction that would radically change their meaning. What was said by this court in Spring Garden Ins. Co. v. Imperial Tobacco Co., 132 Ky., 7, in speaking of the right of an insurance company to limit its liability and the rules that should be applied in the construction of insurance policies, is very applicable here. In that case the court said:

"The companies had the unquestioned right to insert as many reasonable provisions in the policy exempting them from liability as they thought proper or necessary. We know of no rule of law that denies to insurance companies this privilege. They may limit the amount of insurance they will offer, may limit the species of property they will insure, may provide reasonable conditions that the insured must observe, as well as conditions that will in certain states of case operate as a forfeiture of the policies or waiver of the right of the insured to recover upon them, and may protect themselves from loss resulting from causes that they do not desire to offer indemnity against. Why, then, should these words by which the companies undertook to limit their liability be stricken from the policies or ignored in their construction? They are not obnoxious to any principle of law or public policy. They are not surplusage. They are not in conflict with any other provisions in or words of the policies. They may be read harmoniously in connection with the other and subsequent clauses, and, when so read, become a material, intelligent part of the contracts. They were inserted for a purpose, intended to have a meaning, are not of doubtful or uncertain import, and, when fairly and reasonably applied, they exempt the companies for loss by fire when the fire is caused by riot. In the construction of policies the same rule obtains as do in the construction of other contracts, with the exception that a policy will be construed in favor of the insured so as not to defeat, without plain necessity, his claim to the indemnity

which 'in :taking' the insurance 'it' was his object to se-
cure; and, when the words are fairly susceptibl $\perp$ of two
interpretations, that which will sustain his claim and
cover the loss must by preference be adopted.   It may
also be said that ambiguities, and words, sentences, or
clauses of doubtful meaning, will be construed against
the insurer; and this for the reason so often declared
that the companies themselves prepare the policies with
great care and deliberation, and, as the insured has no
election except to accept them as prepared   and   pre-
sented to him, it is fair that they should be construed
most strongly against the insurer and most liberally in
favor of the insured, so that the purpose for which the
insurance was obtained may be effectuated, if this can
be done without doing violence to the contract.''

The Supreme Court of California in Blunt v. Fidel-
ity & Casualty Co., 145 Cal., 268, had before it for con-
struction a clause in a policy similar to this, and in the
course of the opinion the court said:

''The fourth clause above quoted is not unlawful and
it cannot be eliminated on the ground that it was not ex-
pressly referred to in the application.   The effect of
this clause is that the defendant did not agree to insure
the policy holder against injuries from accidents re-
ceived by him during such part of the time covered
thereby. as the insured shall be insane, except to the
amount of the premium paid; and this regardless of the
question whether the injuries were inflicted by himself
intentionally or otherwise, or were received by him from
some other cause. Insurance during such insanity, except
to that extent, was simply not a part of the contract; and
the agreement in that contingency was that the company
should be liable only for a sum equal to the premium
paid.   Language could not express the idea more clearly
than it is expressed in the policy.   The courts have al-
ways construed in favor of the assured every ambiguity
and uncertainty in contracts of insurance; but where the
words are clear and free from uncertainty, and the mean-
ing is plain, the contract as made between the parties
is beyond the power of the courts to change by forced
construction.   There was good reason for the insertion
of the clause.   A sane man will naturally and instinc-
tively protect himself from injury, while, if insane, he
might unconsciously expose himself thereto.   It is to be
presumed that, in fixing the amount to be paid as a

premium, the company took into consideration its proposed exemption from full liability during such insanity, if it should occur, and reduced its premium accordingly. The assured received the benefit of this reduced amount of premium and hence the contract cannot be considered inequitable or unfair.''

The further argument is made that as the third exception in the clauses provides that the association shall not be liable for injuries sustained at a time when the member is ''engaged in any act in violation of any law or ordinance,'' this contemplates some voluntary or intentional act or conduct upon the part of the insured. Therefore, it is said that the first and second exceptions should be construed to apply only when the insured has acted; or, in other words, the word ''act'' in the third exception should be read into the first and second exceptions and the clause as a whole construed to mean that the exceptions did not apply unless the insured sustained the injury on account of some act performed by him as the result of mental effort.

Of course, if this construction should be applied to this clause, the effect would be that the exception applicable to injuries sustained at a time when the insured was insane, would lose its intended and natural meaning. The liability or non-liability of the association would depend on the capacity of the insured to understand his act and not on the fact that he was laboring under some mental disturbance at the time the act was committed. And the same rule of construction would necessarily be applied as was applied in the cases construing what may be termed the ''old suicide clause.''

But we do not find any tenable ground upon which to rest this strained construction. To so construe this clause would do violence to its plain meaning; interpolate into the exceptions relating to insanity a meaning that is confined, by the very terms of the clause, to the exception relating to acts committed in violation of a law or ordinance.

As applied to the facts of this particular case, the clause, as it now reads, is very plain and very simple. It is, in our opinion, susceptible of only one construction, and according to that construction the association was not liable to the insured in any sum, and so the judgment is reversed, with directions to dismiss the petition. The whole court sitting, Chief Justice Miller dissenting.