## Hunt v. McCloud.

(Decided December 3, 1929.)

802

E. J. PICKLESIMER for appellant.

W. A. DAUGHERTY for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS— Reversing.

A short time prior to October 23, 1926, T. M. Hunt was convicted in the Pike circuit court of the crime of arson and punished by confinement in the penitentiary for a term of two years. He was the owner of a number of tracts of land in that county, including some real estate in some of the towns in the county, and he also owned personal property, a part of which consisted of notes, stocks, and other valuable obligations, but the total amount of which does not appear in the record. He was married to the appellee and defendant below, Lennie Hunt McCloud (nee Lennie Hunt) in March, 1926   On the first day mentioned he procured to be prepared two deeds from himself to his wife, who was the defendant below, whereby he conveyed to her all of his real estate in that county, but he did not subscribe and acknowledge them until the next day, October 24, 1926.   The following day (October 25, 1926) he and his wife executed and acknowledged this writing (omitting caption, signature, and attesting clause): "This agreement, made and entered into by any between T. M. Hunt, party of the first part, and Lenna Hunt, his wife, party of the second part, is to show that: Whereas, T. M. Hunt has recently been convicted of a felony and sentenced to two years confinement in the State Reformatory, and he having implicit confidence in the virtue, honesty and fidelity of his said wife, and not knowing as to whether or not he will return from said reformatory, hereby this day has transferred conveyed and deeded, to his said wife, Lenna Hunt all of his property both personal and real to hold in trust

for him, and the same is not made to defraud, cheat or wrong any of his creditors or any one that he might owe or be equitably obligated to directly or indirectly whatsoever. And for and in consideration alone of the above set out facts the conveyances to the property hereby mentioned above will be made.''

He prosecuted an appeal from the judgment convicting him and filed the transcript with the clerk of this court, but before his appeal was heard some one killed him and his appeal abated. Prior to his marriage with defendant he executed his will whereby he devised his property, or the most of it, to her, but under section 4832 of our statutes that will was revoked by his subsequent marriage. He never executed another one, and died intestate. The only heir that he left was his brother, the appellant and plaintiff below, George H. Hunt. But he owed some debts, the amount of which is not disclosed by the record. After his death plaintiff filed this equity action against defendant, who in the meantime had married one McCloud, and in his petition plaintiff set out, in substance, the facts as above briefly outlined and averred that plaintiff held the legal title to the real estate and the personal property that her husband had transferred to her in trust, and her deceased husband, T. M. Hunt, was the equitable titleholder to such property, and that plaintiff as his only heir was entitled to all of such property subject to the distributable rights of the defendant therein, and the court was asked to so adjudge.

In her answer the defendant admitted a large part of the facts set out in the petition, but she denied that it was the intention and purpose of her husband and herself, by the execution of the writing of date October 25, 1926, to declare a trust in his favor, and further alleged that such writing was obtained by fraud, in that the intent and purpose of her husband in having it prepared was to simply make a declaration that his deeds which he had executed to his wife were not intended to defraud his creditors, and that his only object in the execution of that writing was to make an affidavit to that effect, and that the attorney who prepared it committed a fraud by phrasing it as it now appears, and as it was when executed. Proper pleadings made the issues, and upon final submission the court dismissed plaintiff's petition, followed by his prosecuting this appeal.

Defendant gave her testimony in the cause and which if competent sustained her defense, but the court properly quashed that deposition because she was an incompetent witness under both subsections 1 and 2 of section 606 of the Civil Code of Practice, and which left no testimony whatever in the record to sustain the alleged fraudulent execution of the written declaration of trust. But if it were otherwise, then the other testimony heard in the cause was abundantly sufficient to overcome the testimony of the wife on that issue and to fully authorize a finding that no such fraud was practiced, but that, on the contrary, the written declaration of trust was fully understood by the executing parties, and that it was their intention and purpose for it to have full effect. The question then is (and which is practically the only one argued in support of the judgment): Whether the declaration of trust is effectual for that purpose under the facts appearing in the record?

Independently of the quashed testimony of defendant, a witness testified that on the day the deeds were acknowledged (October 24, 1926) defendant's husband handed them to her with the direction that she record them, but before that was done on October 26, 1926, the declaration of trust was executed. That declaration was written by O. A. Stump, who was the commonwealth's attorney of the circuit court judicial district of which Pike county is a part. The circumstances under which it was done, as told by him, were these: A day or two before the preparation of the deeds by deceased, T. M. Hunt, to his wife, the former approached the attorney and stated to him that in the condition of his health he doubted if he would survive his sentence, if the judgment of conviction was affirmed, and he wanted the attorney to act as his trustee in a trust deed that deceased wanted to execute to attorney, but in which the grantor was to convey to the attorney only the legal title with himself the equitable owner. The attorney declined to enter into any such arrangement or to prepare any such deed to be executed to another, but suggested that other counsel in the city of Pikeville could be procured to do so.

On October 25, the next day after the deeds were acknowledged, the deceased and his wife approached witness, and deceased then imparted to witness the fact that he had executed deeds to his wife, and they were submitted to witness, who informed deceased that they

were absolute in their terms and contained no trust provision; whereupon deceased expressed a desire to correct them by the execution of some kind of appropriate writing and requested witness to prepare it, which he did, followed by its execution and acknowledgment as hereinbefore stated. It is said, however, that the witness who so testified was incompetent under the provisions of subsection 4 of section 606, supra, of the Civil Code of Practice, which renders an attorney incompetent to testify "concerning a communication made to him, in his professional character, by his client, or his advice thereon, without the client's consent," and a motion was made in the trial court to exclude the testimony on that ground, but which the court overruled and which we are asked to review.

The incompetency of the witness, for the reasons stated, could not affect the question for determination, since in that case the declaration of trust would stand unimpeached and its legal effect would be determined by its contents. But in the cases of Taylor v. Roulstone, 60 S. W. 867, 22 Ky. Law Rep. 1515 (petition for rehearing 61 S. W. 354, 22 Ky. Law Rep. 1515), Smick v. Beswick, 113 Ky. 439, 68 S. W. 439, 24 Ky. Law Rep. 276, and Brogan v. Porter, 145 Ky. 589, 140 S. W. 1007, and others cited therein, we held that the incompetency as a witness did not apply under the provisions of the Code supra, where the attorney was acting for both parties and the matters testified to by him occurred in the presence of each other. So that, if it should be conceded in this case that the communications were such as to bring them within the Code inhibition, the testimony of the witness in this case is still competent, because the communications were made in the presence of both the trustee and the cestui qui trust, when such relationship was created, and under our cited opinions the court properly overruled defendant's objection to the testimony of the attorney who prepared the trust declaration in the presence of both parties to the instrument. The question therefore for decision is the determination of its legal effect, and which is the theory upon which counsel for both sides presents the case in this court.

It is strenuously argued by counsel for defendant that the written declaration of trust was executed after the delivery of the deeds to defendant, whereby she became vested with the absolute title, and that there was no consideration for its execution. But we do not find it to

be the law that a consideration in a fully executed trust is required to make it effectual. The text in 26 R. C. L. 1186, sec. 23, on that subject says: "It is the generally accepted rule that if a trust is perfectly created, so that the donor or settlor has nothing more to do, and the person seeking to enforce it has need of no further conveyance from the settlor, and nothing is required of the court but to give effect to the trust as an executed trust, it will be carried into effect, although it was without consideration." And the same text, page 1182, sec. 19, is authority to sustain the sufficiency of the *declaration* in this case to create such a trust.

But we are not required to look to text authorities or opinions of foreign courts touching those questions, since they were directly involved and disposed of adversely to the contention of counsel for appellee, and defendant, in the case of Shortridge v. Shortridge, 207 Ky. 790, 270 S. W. 47. The facts of that case in all essential respects are practically on all fours with those appearing in this case. Other domestic opinions cited in that case sustain the principles announced in it, and which are in accord with the general principles governing the creation of trusts. In the Shortridge opinion the husband executed and acknowledged a deed conveying his real estate to his wife after he had been convicted and sentenced to serve a term in the penitentiary, and he instructed the clerk before whom his acknowledgment was taken to record it and deliver it to his wife, which was done. After he was incarcerated in the penitentiary, and while his wife was visiting him in that institution, he made an oral declaration of his intention and purpose by the execution of the deed to create only a trust in his wife while he was serving his term in the penitentiary. This court in that opinion upheld and enforced the trust, and from which it will be seen that possibly that case was weaker in support of the trust than this one, because the trust declaration there was in parol, while here it was in writing duly acknowledged. However, the wife in that case acknowledged the parol declaration and later attempted to reinvest her husband with the legal title to the property but by a defective conveyance. But, notwithstanding its defects this court upheld and enforced the trust. It is useless to repeat the reasoning for such conclusion employed in that opinion, since it can be obtained by a reference to it and because of which it will not be inserted herein.

The final conclusion arrived at in that case is thus stated in the opinion: ''The several other questions argued in briefs need not be discussed or even stated, since we are convinced that under the above facts, clearly established by the proof, appellant was at all times the equitable owner of the land, and his wife simply held the legal title thereto under a parol constructive trust which she at her death could not have denied or avoided, and which therefore her children, claiming the land as her heirs, can neither deny nor avoid.'' The same contention was made therein as is made by counsel for defendant herein, but we held that, even if it should be found under such circumstances, in cases of conveyances between husbands and wives and others occupying a confidential relationship, that the vendee in the absolute deed had accepted it before the declaration of trust by the grantor (which in that case would be when the attacked deed therein was delivered to the wife by the clerk as per directions of the husband, and in this case when the deeds were delivered by the husband to defendant on October 24, 1926), then ''the minds of the parties never met, but if the acceptance occurred when, for the first time, the parties had an opportunity to agree about the matter, the promise of the grantee to reconvey was a part of the transaction from the very instant there was any mutuality therein. We are therefore of the opinion that Mrs. Shortridge's acceptance of the deed and her promise to reconvey were contemporaneous, and sufficient to raise a constructive trust, even if there had been no confidential relationship existing between the parties.'' Observation and experience have taught us that it is rare indeed when the facts of any two cases are exactly similar, but the facts of the Shortridge case are as nearly so to the facts of this one as are usually found to exist.

The declaration of trust also applies to undesignated and unnamed personal property that the declarant states therein he had transferred and delivered to defendant, but the record does not disclose the nature of that property, nor the amount of it, and upon a return of the case additional proof may be taken by the parties on that issue.

Wherefore, the judgment is reversed, with directions to set it aside and enter one sustaining the trust and for proceedings consistent with this opinion.