## REYNOLDS METALS CO. v. INSURANCE CO. OF THE STATE OF PENNSYLVANIA.

No. 102.

District Court, W. D. Kentucky, Louisville Division.

Sept. 30, 1941.

Frank A. Bull, of New York City, Edward P. Humphrey, of Louisville, Ky., Duncan & Mount, of New York City, and Humphrey & Taylor, of Louisville, Ky., for plaintiff.

Frank M. Drake, of Louisville, Ky., and John L. Fletcher, of New York City, for defendant.

MILLER, District Judge.

The plaintiff Reynolds Metals Company brought this action to recover of the defendant Insurance Company of the State of Pennsylvania the sum of $221,697.40 with interest under a policy of insurance issued by the defendant to the plaintiff covering the period of January 15, 1937, to January 15, 1938. The policy insured against losses caused by fire, tornado, flood and other risks and perils of transportation. The petition alleges that while the policy of insurance was in full force and effect there occurred an unusual and unprecedented flood in the Ohio River in the latter part of January, 1937, which flooded parts of the city of Louisville and surrounding territory, and inundated property of the plaintiff at its manufacturing plants No. 1 and No. 3 and on railroad cars and other transportation conveyances. Recovery is sought in the sum of $170,183 for merchandise awaiting shipment lost at plant No. 1, in the sum of $14,120 for merchandise awaiting shipment at plant No. 3, in the sum of $2,394.40 for property in the course of transportation to or from the plaintiff's plant, and in the sum of $35,000 for property held or stored at its two plants. It is admitted by the parties that the policy was in full force and effect at the time of the flood and that loss caused by flood was one of the perils insured against. However, the defendant contends that the maximum limit of liability under its policy was $35,000, and has moved to dismiss the action as to any claim in excess of $35,000. Although it is stated by the parties that a controversy exists between them as to whether or not the coverage under the policy included all four types of losses above referred to, yet by agreement that question is reserved for later decision. The only question presented at the present time is whether or not total liability under the policy is limited to $35,000. This raises a question of law to be determined by a

construction of the written instrument involved.

The front page and face of the policy provides in part as follows:

"Insurance Company of The State of Pennsylvania * * *

"In consideration of the stipulations herein named and of One Thousand four hundred twenty five and 00/100 Dollars Premium, hereby insures Reynolds Metals Company, Inc. &/or as set forth in form attached, #19 Rector Street, New York City. From noon of 15th day of January, 1937, to noon of 15th day of January 1938, standard time at place of issuance, to the amount of Thirty five thousand and 00/100 Dollars; but this policy shall not cover, attach, or be contributing insurance for more than ——— as per form attached ——— Dollars in any one casualty, either in case of partial or total loss, or salvage charges, or any other charges or expenses, or all combined On goods and merchandise, consisting of ——— as per form attached ——— against losses caused by fire, lightning, cyclone, tornado, flood, theft, collision, derailment, and all risks and perils of transportation, except as hereinafter specified, from the time the property insured passes into the custody of any railroad, Railway Express Agency, Inc., or under their uniform Air Service Express Receipt or licensed public truckman, for transportation only by land and/or while on ferries and/or in cars on transfers, in connection therewith, until delivered by railroad, express or licensed public truckman at destination."

The policy is designated at the top "Transportation Policy". On the back of the policy there is printed, in addition to the name of the insurance company and the names and addresses of its agents the following:

"Transportation Policy   Form A

"Expires   January 15th, 1938.

"Name of Assured, Reynolds Metals Company, Inc.

"Amount   $35,000.00.

"Premium   $1425.00."

Two separate typewritten riders are attached to the policy, which are referred to by the parties as the Shipment Coverage Rider and the Storage Coverage Rider respectively. Both riders contain the statement "attached to and forming part of Policy No. SOP.805047 of the Insurance Company of the State of Pennsylvania," which is the number of the printed policy above referred to. Paragraphs 2, 3, 8, 13 and 18 of the Shipment Coverage Rider provide as follows:

"2. Notwithstanding anything to the contrary contained in the printed conditions of the policy to which this form is attached, this policy unless otherwise provided in this form or endorsement subsequently attached hereto covers any and all physical loss and/or damage from any external cause howsoever and wheresoever occurring, irrespective of percentage, including general average, salvage and/or other charges (accumulated and/or otherwise), expenses and freight.

"3. On any and all shipments of goods, wares, merchandise, machinery and equipment and all other property of every kind and description, in which they may have an interest, insurable, or otherwise, shipped to, from and between point and/or points and/or places in the United States, Canada and Newfoundland, via railroads, express, air express and/or motor transportation companies, steamers, (seaworthiness admitted) seatrains, trucks, (motor or horse-drawn) trailers, handtrucks, taxicabs, all messengers, automobiles, and/or any other conveyance, (whether or not owned and/or controlled by the assured and/or by others) including any and all risks in and/or on and/or adjacent to docks, wharves, piers, bulkheads, covering also at and/or in terminals, elevators, landing sheds, depots, stations and/or platforms, and/or sidings also while awaiting shipment and/or after arrival, including any and all risks on sidewalks, yards and/or elsewhere incidental to loading, unloading and/or removal, including any and all risks while on cars, floats, transfers, ferries or any other connecting conveyances, land or water.

"8. This policy shall not cover attach or contribute in any amount exceeding Thirty-Five Thousand ($35,000) Dollars on any one shipment, unless otherwise stated and/or endorsed hereon.

"13. In the event of loss and/or damage to property insured hereunder, these assurers agree and shall pay on the following basis:

"A. Finished Products on the basis of the assured's invoice, in the absence of an invoice, then at the assured's net selling price.

"B. Raw materials on the basis of the market value and/or replacement cost (whichever may be the higher) at destination.

"C. Branch Office and/or Branch Plant shipment: On shipments between branch offices and/or plants, on the basis of the selling cost and charges to the property lost and/or damaged.

"D. Machinery and/or Manufacturing Equipment and/or Appurtenances and/or Parts thereto and/or other Manufacturing Supplies: On the basis of the replacement cost, plus all charges (accrued or otherwise) added thereto, plus 5% on Machinery and 25% on other Manufacturing Equipment and/or Appurtenances and/or Parts thereto and/or other Manufacturing Supplies.

"18. Any and all clauses and conditions in the printed portion of this policy and the customs of Underwriters, in conflict with the typewritten form, are waived and declared null and void."

■■■ The plaintiff contends that the reasonable construction of the instrument as a whole, including both the printed portion and the riders, is that liability under the policy is not limited to a total of $35,000 but is only limited within the coverage of the policy to $35,000 on any one shipment; that if any ambiguities exist they should be construed in favor of the insured; and that if any conflict exists between the printed portion of the policy and the riders the provisions of the rider control by reason of Section 18 above referred to. In support of its contention plaintiff points out that paragraph 2 of the rider provides that the "policy covers any and all physical loss and/or damage from any external cause howsoever and wheresoever occurring"; that paragraph 3 of the rider provides for liability "on any and all shipments of goods, wares, merchandise, machinery and equipment and all other property of every kind and description, in which they may have an interest"; that paragraph 8 of the rider limiting liability to $35,000 on any one shipment would be meaningless if the policy did not contemplate a total liability in excess of $35,000, and that paragraph 13 of the rider indicates that payment of losses is not to be restricted to a total of $35,000. Much of the plaintiff's argument is plausible if we consider the different sections relied upon as isolated sections, and without giving due weight to the evident intent of the contracting parties. It is a fundamental rule in the construction of written instruments that the instrument is to be construed according to the intent of the parties thereto and that each section of the instrument must be considered in its relation with all

the other provisions of the instrument. It seems rather plain to the Court that it was the primary intention of the parties to execute a contract of insurance in the maximum amount of $35,000, and that the provisions relied upon by the plaintiff do not provide for any additional insurance when considered in connection with all of the provisions of the entire instrument. In the first place the policy specifically provides on its face in the insuring clause that the Insurance Company insures the plaintiff to the amount of $35,000. The back of the policy also carries the notation that the amount of the policy is $35,000. These two facts indicate more clearly than anything else that the policy was written to cover a liability not exceding $35,000. They must be ignored or read out of the policy in order to accept the plaintiff's contention. It is true that Section 18 of the Shipment Coverage Rider provides that if clauses in the printed portion of the policy conflict with the typwritten rider they are waived and declared void. It is also well settled, as claimed by the plaintiff, that if an insurance contract is so drawn as to be ambiguous, or to be fairly susceptible of two different constructions, so that reasonably intelligent men would honestly differ as to the meaning of the contract, the construction most favorable to the insured should be adopted. But before either of these rules is to be applied there must be either a conflict between the printed and typewritten portions of the contract or a real ambiguity. It is not enough for one party to suggest and claim conflicts and ambiguities and by pressing its contention obtain the application of the rule referred to. If no real ambiguity exists the rule has no application. Fish's Ex'x v. Massachusetts Mutual Life Insurance Co., 278 Ky. 492, 128 S.W.2d 953; Bonnie v. Maryland Casualty Co., 280 Ky. 568, 133 S.W.2d 904. Considering the instrument as a whole I see no real conflict between the printed portion of the contract and the typewritten riders, nor any real ambiguity. On the contrary, the clauses relied upon by the plaintiff seem to reasonably fit in with the general purpose of the contract as first expressed in the front page insuring provision. The printed portion of the contract is a standard form transportation policy. Its coverage was evidently not broad enough, as to kinds of risks insured against, to meet the wishes of the plaintiff. Accordingly, the two riders were attached. The evident purpose of this was to extend the coverage to other risks, not included in

the standard transportation policy. Paragraph 2 of the rider extended the coverage to any and all physical loss or damage from any external cause. This merely removed any existing limitations as to damage from external causes, but still excluded any kind of damage from internal causes. Accordingly, the phrase "any and all physical loss and/or damage from an external cause" refers to the character of the damage rather than the amount of the damage. Likewise paragraph 3 of the rider was used to extend the coverage to goods at places other than in actual transportation, such as in terminals and on platforms and sidewalks, which were not included under the straight transportation policy. Accordingly, this paragraph extended the coverage as to locations, but is not to be construed as attempting to increase the maximum liability. I see nothing in paragraph 13 of the rider which would indicate any intention to increase the liability of the insurer. It merely provides a method of computing values when and if a loss should occur, providing different methods for different kinds of losses.

■■ Paragraph 8 of the rider appears to be the only provision which gives any support to the plaintiff's contention. It is possible, if we consider that paragraph apart from the rest of the contract, to read into it an implied provision of liability to the extent of $35,000 on each of numerous shipments. But this is at its best only an implication. It contains no express statement or promise to assume liability in excess of $35,000. It is true that if the contract is construed as contended for by the defendant there would be no need for paragraph 8, but the fact that the Insurance Company has inserted into its contract a provision which is unnecessary for its protection does not mean that such a provision should be twisted into imposing upon it additional liability not originally contemplated. It appears to me far more consistent to consider it as a repetition, intended to emphasize its previously expressed limit of liability. It is an established and accepted custom in writing contracts of insurance, that coverage, both as to kind and amount, be expressed by affirmative statements. It would be most unusual to find a policy attempting to affect certain insurance coverage by the use of negative words, from which the positive obligation of the Insurance Company would have to be implied. Such a policy would not be acceptable to any careful insured. When we give this fact the full consideration which it deserves, it seems impossible to consider paragraph 8 as being in conflict with the express insurance provisions set out on Page 1 of the policy. On the contrary, it appears to be entirely consistent with that obligation and to be a restatement of the same principle.

■ There are several other features of the contract which stand in the way of adopting plaintiff's suggested construction. The insurance policy is either limited to a maximum liability of $35,000 or it is substantially a policy with unlimited total liability (the only limitation being $35,000 on any one shipment). If we accept plaintiff's construction plaintiff could recover for loss on one shipment, five shipments, ten shipments or any number of separate shipments. Such unlimited liability is inconsistent with the following facts:

(a) The fixed premium of $1,425 certainly does not contemplate unlimited liability. It requires only ordinary business experience to realize that such a premium is consistent with a maximum liability, resulting from various types of losses, of $35,000, and that it is most inconsistent with a potential liability of several million dollars. There is nothing in the policy that restricts the loss to goods on hand at the time when the policy was written, or which prevents the insured from materially expanding its business with a resulting increase in inventory. Nor is there any provision in the policy providing that the premium will be based on inventory, or redetermined from time to time as inventory may change. If unlimited liability was contemplated, including increased inventories, such a method of adjusting the premium would be reasonable and to be expected. A similar principle is used in Workmen's Compensation Insurance where potential liability may be subsequently increased by an increase in employment, which variable factor is carried into the premium by basing the premium upon the insured's payroll at different periods through the year. Absence of such a provision negatives the intent to assume unlimited liability.

(b) Section 16 of the Shipment Coverage Rider provides "other insurance permitted without notice." This is to be logically construed as other insurance of the same character. Yet if the present policy is unlimited in amount there would be no necessity for taking other insurance of the same character.

134

(c) The general conditions of the printed policy provide that every claim paid under the policy reduces the amount of insurance by the sum so paid, and in the event of loss and upon payment of an additional premium the sum insured under the policy is reinstated and put in force to the full amount. This is a common provision which enables the insured to reinstate his policy to its face amount after a partial loss has been suffered and paid for. If the policy is for unlimited liability, as contended for by the plaintiff, there would be no need for such a reinstatement provision.

In the opinion of the Court the foregoing features of the policy strongly support the view that it was the intention of the contracting parties to put into effect insurance with a broad coverage, but nevertheless limited to a maximum liability of $35,000.

The defendant's motion to dismiss the action as to any claim in excess of $35,000 is accordingly sustained.