**PENNSYLVANIA CASUALTY CO. v. ELKINS et al.**

No. 461.

District Court, E. D. Kentucky.

April 30, 1947.

Stanley B. Mayer, of Louisville, Ky., for plaintiff.

James Park, of Lexington, Ky., and Draffen & Dean, of Harrodsburg, Ky., for defendants.

FORD, District Judge.

At the time of the events which resulted in this litigation, the defendant, William Elkins, a resident of Burgin, Mercer County, Kentucky, was in the business of operating motor trucks as a contract carrier. He was engaged principally in local transportation of livestock. He had regular employees who assisted him in his business.

Late in the afternoon of December 2, 1943, when Elkins returned from a trip to Cincinnati, he received a call to be at Crossville, Tennessee, by daylight the next morning, to haul a load of cattle from there to Shakertown, Kentucky. Ernest Nave and his wife, the defendant Della Nave, a daughter of Mrs. Elkins, happened to be then visiting at the Elkins' home. Nave and his wife resided in Nelson County, Kentucky, where he was then and for several years had been regularly employed. He had formerly been a regular employee of Elkins in the operation of the trucking business, and since then, upon his occasional visits, he would sometimes help Elkins in the business when his services were needed.

After making arrangements for someone to take his place during his absence from his regular employment, Nave agreed to accompany Elkins on the trip to Tennessee for the purpose of helping drive the truck and to otherwise assist with the load of cattle. Later in the evening Nave and Elkins departed for their destination. Nave drove the truck all the way to Tennessee. While returning on the following day with the load of cattle, the truck, with Elkins driving, was overturned and Nave was killed.

At the time of the accident Elkins carried automobile liability insurance in the sum of five thousand dollars under a policy issued by the plaintiff, Pennsylvania Casualty Company. By the terms of the policy, subject to the liability exclusions and conditions thereof, the company was obligated to pay all damages (not to exceed five thousand dollars), for which liability was imposed on Elkins by law on account of bodily injuries or death sustained by any person as the result of an accident in the use or operation of the motor truck in the business of Elkins; and also to defend any suit against him for damages on that account. The policy expressly excluded from its coverage "bodily injury to or death of any employee of the insured while engaged in the employment, other than domestic, of the insured."

On September 14, 1944, the defendant Della Nave, as administratrix of her husband, Ernest Nave, filed suit against the defendant William Elkins in the Circuit Court of Mercer County, Kentucky, alleging that the death of Nave was the result of the negligence of Elkins in the operation of the truck, and seeking damages on account thereof. The plaintiff's attorneys, without waiving the right of the insurance company to deny liability under the policy for any judgment rendered in the action, and after notice to Elkins by registered mail that participation in the case by them was subject to such reservations, conducted the defense on behalf of Elkins. A trial resulted in a judgment against Elkins in the sum of fifteen thousand dollars.

To resolve the controversy between the parties as to liability under the policy, the plaintiff filed this action seeking a declaratory judgment that at the time of his death Nave was an employee of and engaged in the employment of Elkins, the insured, and that under the exclusion clause of the policy the plaintiff is not liable for any damages recovered against Elkins on account of the death of Nave.

The defendants contend that the exclusion provision of the policy does not apply to Ernest Nave for the reasons:

(1) That at the time of the accident which resulted in his death Ernest Nave was not an "employee" of William Elkins, the insured, in any sense of the word but, having other regular employment, he was merely a casual, incidental and temporary helper, voluntarily rendering a particular service as an accommodation to Elkins;

(2) That the phrase "any employee," as used in the exclusion provision of the policy is ambiguous and that it is susceptible of being interpreted in a restrictive sense importing regularity and continuity of service for wages or salary rather than in the broader sense including every type of the relationship of employee and hence, under the familiar rule that where a provision of an insurance policy is open to two or more interpretations the one most favorable to the insured must be adopted, the exclusion clause of the policy here in question should be interpreted to have no application to Ernest Nave whose employment, if such relation existed at all, was only casual and temporary.

In support of the claim that Nave was an employee of Elkins, the plaintiff introduced in evidence three writings bearing the signature of Elkins, which were procured by the plaintiff's attorney in the course of his investigation of the accident. Two of these writings, both dated December 9, 1944, six days after the accident, contain statements to the effect that at the time of the accident Nave was employed by Elkins in assisting him to transport cattle by his truck and that for such service he had agreed to pay Nave thirty cents per hour. While admitting his signature to the writings, Elkins denies that he employed Nave or agreed to pay him any compensation for his services, and denies that he read the writings or knew such statements were contained therein when he signed them. He testified, however, that before he signed the third written statement of April 22, 1944, he read it and that the facts therein stated are true. In that statement he said:

"On December 3, 1943, Ernest Nave was making a trip to Crossville, Tennessee, with me, having been employed by me as driver and helper.

"Ernest Nave drove on the way down, and I was driving on the way back, and somewhere near Jamestown, Tennessee, about 9:30 A. M. that morning, while I was driving along on my proper side of the road, traveling along about fifteen to twenty miles per hour, Ernest Nave opened door of truck and was leaning out of the truck to see if cattle were all up, as one of us would look back at the cattle at intervals, probably once each hour. As he looked out this time he slipped and fell out of truck, falling under truck; so I cut to my left but could not avoid running over him.

"In cutting my truck I turned over and was injured myself and did not recall facts of occurrence for three or four weeks."

The defendants insist that these writings, although made long before any litigation arose out of the accident, constituted privileged communications between attorney and client and hence are inadmissible as evidence against the defendant Elkins in this action. The rule invoked by defendants is not applicable where, as here, the attorney to whom the communications were made was the representative of both parties to the litigation. Grand Trunk Western R. Co. v. H. W. Nelson Co., 6 Cir., 116 F.2d 823; Hunt v. McCloud, 231 Ky. 801, 22 S.W.2d 285; Standard Fire Insurance Co. v. Smithhart, 183 Ky. 679, 211 S.W. 441, 5 A.L.R. 972; Brogan v. Porter, 145 Ky. 587, 140 S.W. 1007.

At the trial of this case Mr. Elkins testified, in substance, that about two years prior to the occasion in question Nave had worked for him regularly on trips of this kind, and that by reason of his former employment he well understood the duties of a helper on such an occasion. He testified

that he took Nave along for the purpose of helping him on the trip and that his particular duties were to look after the cattle and in the event any of them should get down in the truck, to help them up, and in general to do whatever Elkins directed him to do. He said, "He had helped me enough that I didn't have to instruct him. He knew what his job was to do."

"Q. 148. And he had duties and was working under your instructions? A. Yes."

The plaintiff introduced a transcript of the testimony which Mr. Elkins gave in the trial of the damage suit against him in the Mercer Circuit Court, from which it appears that he gave substantially the same testimony in that case.

■ The rule prevailing in Kentucky, as well as elsewhere, seems to be that while the obligation to pay compensation for service rendered is a proper element to be considered in determining whether the relationship of employer and employee exists, it is not essential. W. H. Neill Co. v. Rumpf, 148 Ky. 810, 147 S.W. 910, L.R.A. 1917C, 1199. The relationship of employer and employee is synonymous with that of master and servant. Barnes v. Indian Refining Company, 280 Ky. 811, 816, 134 S.W. 2d 620. "One volunteering services without an agreement for or expectation of reward may be a servant of the one accepting such services." Restatement, Agency, section 225. The test as to the existence of the relationship is whether there is an understanding between the parties that one is to render personal service to or for the benefit of the other, and recognition by them of the right of one, the employer or master, to order and control the other, the employee or servant, in the performance of the work and to direct the manner and method of its performance. 35 Am.Jur. pages 445, 446, § 3; Employers Indemnity Co. v. Kelly Coal Company, 149 Ky. 712, 715, 149 S.W. 992, 41 L.R.A.,N.S. 963; W. T. Congleton Co. v. Bradley, 259 Ky. 127, 130, 81 S.W.2d 912.

■ The fact that Nave was in the general employment of another is not inconsistent with his temporary employment by Elkins under the circumstances disclosed by the evidence. "One may be in the general service of another, and, nevertheless, with respect to particular work, may be transferred, with his own consent or acquiescence, to the service of a third person, so that he becomes the servant of that person, with all the legal consequences of the new relation." Standard Oil Co. v. Anderson, 212 U.S. 215, 220, 29 S.Ct. 252, 253, 53 L.Ed. 480.

Thus it appears that if the written statements be eliminated from the evidence, the testimony of Elkins establishes the fact that at the time of the fatal accident Nave was a temporary employee of Elkins, subject to his direction and control as to manner and method of his work and engaged in performing services of substantially the same nature usually performed by the regular employees of Elkins.

■ The adjective "any," in effect, is equivalent to *every*. It serves to enlarge the scope of the phrase "any employee," as used in the exclusion clause of the policy, so as to clearly negative the idea that it was used in a restrictive sense. It precludes limiting the application of the phrase to a particular kind of employee. All ambiguity as to the breadth of the meaning of the exclusion clause is removed by this characterizing adjective extending its appliction to *every* employee of the insured while engaged in the employment, "other than domestic," whether such employment be regular, incidental, temporary or permanent. That such is the significance of "any," as ordinarily used and popularly understood, is attested by all standard dictionaries. There is no need for resort to technical rules of interpretation or construction. The rule that an ambiguity in an insurance policy will be given the interpretation most favorable to the insured, has no application where the terms used are clear and unambiguous. Bonnie v. Maryland Casualty Co., 280 Ky. 568, 133 S.W.2d 904; Reynolds Metals Co. v. Insurance Company of the State of Pennsylvania, D.C., 41 F.Supp. 129, 132.

In Federal Deposit Insurance Corp. v. Winton, 6 Cir., 131 F.2d 780, 782, 143 A.L.R. 1050 the Court dealt with a similar question

in respect to the meaning of the phrase "any deposits," as used in the Federal Reserve Act relating to the liability of the Federal Deposit Insurance Corporation as the insurer of bank deposits in a bank upon the termination of its insured status, the provision of the statute being that the amount of such insurance should be reduced to the extent of "all subsequent withdrawals from *any deposits*." (Emphasis supplied.) It was contended that the phrase "any deposits" should be limited in its application to deposits made before the termination of the insured status of the bank. The Court said:

"* * * we find no room for interpretation or construction at all. The words 'less all subsequent withdrawals from any deposits of such depositor' as they appear in the italicized portion of the statute quoted are plain, simple and explicit. There is nothing doubtful about their meaning. The obvious meaning of the entire phrase, and one that is supported by Webster's definition of the word 'any' as 'one indiscriminately of *whatever kind* or quantity' (italics added), is that after the date of termination F. D. I. C.'s liability would be reduced by every withdrawal from deposits of the depositor of whatever kind and whenever made. There is no room for the construction of an unambiguous statute; not even where the purpose is to remove an apparent hardship."

No law denies to insurance companies the right to insert in insurance policies any reasonable provision exempting them from certain liabilities. The parties to such a contract have the legal right to stipulate as to what risks the insurer would and would not be liable, and having done so, the Court may not impose new or different liabilities upon the insurer under the guise of interpretation or construction. Spring Garden Insurance Co. v. Imperial Tobacco Co., 132 Ky. 7, 22, 116 S.W. 234, 20 L.R.A., N.S., 277, 136 Am.St.Rep. 164; Interstate Businessmen's Accident Assurance v. Atkinson, 165 Ky. 532, 540, 177 S.W. 254, L.R.A.1915E, 656; North American Accident Insurance Co. v. White, 258 Ky. 513, 514, 80 S.W.2d 577; Mullins v. National Casualty Co., 273 Ky. 686, 690, 117 S.W.2d 928, 118 A.L.R. 331; Ransdell v. North American Accident Insurance Co., 275 Ky. 507, 122 S.W.2d 114.

Employers' liability insurance is a distinct type of coverage. It includes protection against those extraordinary liabilities which may arise from the breach of duties and obligations peculiar to and inherent in the master and servant relation. Presumably the premiums charged for such coverage are increased in proportion to the extra hazards involved. It is not claimed that the premium paid for the insurance in question is that usually charged for protection against "employer's liability".

The exclusion clause in the policy in question is obviously designed to exclude from coverage every type of employer's liability, other than that arising from "domestic employment," regardless of whether the employment be regular and continuous or incidental and temporary. The words used make the broad indiscriminate exclusion sufficiently clear. To hold otherwise would be to make a new contract for the parties entirely different from that which they made for themselves.

For the reasons stated, judgment will be entered declaring that under the terms of the policy in question the plaintiff is not liable for the payment of any of the damages recovered by the defendant, Della Nave, as Administratrix of Ernest Nave, against her co-defendant, William Elkins.